OHIO BOYS TOWN, INC., ET AL., APPELLEES, v. BROWN, ATTY. GEN., APPELLANT.

[Cite as Boys Town v. Brown (1982), 69 Ohio St. 2d 1.]

(No. 80-1724 — Decided January 6, 1982.)

2

Messrs. *Climaco, Seminatore, Lefkowitz & Kaplan,* Mr. *John R. Climaco* and Mr. *Gino Battisti,* for appellees.

Mr. *William J. Brown,* attorney general, and Mr. *Lawrence D. Pratt,* for appellant.

*Per Curiam.* The primary issue in the instant cause is whether appellant was under a statutory duty to provide appellees an opportunity for a hearing pursuant to the provisions of R. C. Chapter 119 prior to rejection of their applications for renewal of their charitable bingo licenses. This court holds that under the facts of this case, there is such a statutory duty imposed by R. C. Chapter 119.

Appellant asserts that the prior-hearing requirement found in R. C. 119.06 is not applicable to the rejection of an application for a bingo license renewal for two reasons. First, appellant contends that the act of rejection is not an adjudication, which is needed to trigger the prior-hearing requirement in R. C. 119.06, but rather a ministerial act. In the alternative, appellant asserts that even if the act of rejection constitutes an adjudication, it is an adjudication which is specifically excepted from the prior-hearing requirements of R. C. 119.06.

This court has carefully reviewed the arguments set forth in this case and finds appellant's position to be without merit for the following reasons.

R. C. 119.06 [2] provides for a hearing only in cases dealing

[2] R. C. 119.06 provides, in pertinent part, that:

"No adjudication order shall be valid unless an opportunity for a hearing is afforded in accordance with sections 119.01 to 119.13, inclusive, of the Revised Code. Such opportunity for a hearing shall be *given before making the adjudication order* except in those situations where this section provides otherwise." (Emphasis added.)

with adjudication orders. Thus, the first determination must be whether the rejection of the applications for charitable bingo licenses in this case constituted an adjudication. As defined in R. C. 119.01(D), " ' [a]djudication' means the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature."

Undisputedly, the Attorney General's office is an agency within the meaning of R. C. 119.01(A),[3] and the Attorney General is the highest authority within that office. In rejecting the applications for bingo license renewal, appellant made a determination, as evidenced by the language in the rejection letter, of the rights of the charities,[4] *i.e.*, their ability to conduct charitable bingo operations as provided for in R. C. Chapter 2915.

The definition of "adjudication" also includes two specific exceptions. First, R. C. 119.01(D) excepts from the definition of adjudication "the issuance of a license in response to an application with respect to which *no question is raised*." (Emphasis added.) This exception is not applicable to the facts of this case, for questions regarding the rejection were raised. R. C. 119.01(D) does not address *contested* rejections of license applications.

Acts of a ministerial nature are also excepted from the definition of "adjudication" in R. C. 119.01(D). A review of the facts of this case demonstrates that the denial of the bingo license applications was not purely a ministerial act.

A ministerial act has been defined as an act " ' * * * which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done.' " *State, ex rel. Trauger*, v.

---

[3] R. C. 119.01(A) defines "agency" to include " * * * the functions of any administrative or executive officer * * * and the licensing functions of any administrative or executive officer * * *."

[4] The language which mandates that the Attorney General grant bingo licenses is found in the first sentence of R. C. 2915.08(B) which states:

"The attorney general shall license charitable organizations to conduct bingo games in accordance with Chapters 119 and 2915 of the Revised Code."

*Nash* (1902), 66 Ohio St. 612, 618, citing *Flournoy* v. *Jefferson-ville,* 17 Ind. 169.

In the instant case, appellant made the determination that the applications of the charities had not demonstrated compliance with R. C. Chapter 2915. In so doing, appellant did more than check for incompleteness or ask for additional information. Before determining that the charities were not qualified for a 1978 license, appellant conducted what he characterized as a "lengthy and extensive" investigation. This process involved judgment and deliberation. Discretion was involved in the conducting of the investigation, interpreting the data, and assessing the impact of the collected data on the renewal applications. The rejection of the applications, which was the end product of the investigation, was an exercise of discretion, and cannot be construed as purely an act of a ministerial nature.

By virtue of the explicit language of R. C. 119.01(D), the rejection of the applications in this case was tantamount to an adjudication inasmuch as every qualification has been clearly met.

This court must next determine whether this adjudication is specifically excepted from the prior-hearing requirements contained in R. C. 119.06.

In the recent case of *General Motors* v. *McAvoy* (1980), 63 Ohio St. 2d 232, where we held that the Director of Environmental Protection had a statutory duty under R. C. Chapter 119 to provide for an adjudication hearing prior to denial of the permit sought, this court construed R. C. 119.06 and the exceptions to a pre-adjudication hearing contained therein. At the outset, we noted that R. C. 119.06 provides, in part, that:

"No adjudication order shall be valid unless an opportunity for a hearing is afforded in accordance with sections 119.01 to 119.13, inclusive, of the Revised Code. Such opportunity for a hearing shall be *given before making the adjudication order* except in those situations where this section provides otherwise." (Emphasis added.)

Based on this language, we held, at page 234, that " * * * an opportunity for a prior hearing is [thus] required unless one of the enumerated exemptions to the statute is ap-

plicable, or other statutory provisions render R. C. 119.06 inapplicable.

"The preadjudication hearing requirement has three specific exceptions * * *," which are specifically enumerated in divisions (A), (B) and (C) of the statute.[5]

Only three exceptions to the pre-adjudication hearing were recognized by this court in *General Motors* v. *McAvoy, supra.* This court has long held that statutory exceptions to the operations of laws should receive a strict interpretation (see *Kroff* v. *Amrhein* [1916], 94 Ohio St. 282, 286).

Appellant, while recognizing that his rejection of the bingo license applications did not fall within any of these three exceptions,[6] nonetheless contends that the rejection in this case should be excepted from the prior-hearing requirement. More precisely, appellant argues that the last three paragraphs of R. C. 119.06 [7] are keyed into the ministerial act of rejection, an act not carrying the weight of an adjudication order and

---

[5] The exceptions found in R. C. 119.06 to a pre-adjudication hearing are as follows:

"The following adjudication orders shall be effective without a hearing:

"(A) Orders revoking a license in cases where an agency is required by statute to revoke a license pursuant to the judgment of a court;

"(B) Orders suspending a license where a statute specifically permits the suspension of a license without a hearing;

"(C) Orders or decisions of an authority within an agency if the rules of the agency or the statutes pertaining to such agency specifically give a right of appeal to a higher authority within such agency or to another agency and also give the appellant a right to a hearing on such appeal."

[6] The Court of Appeals found appellant's argument that the rejection of the applications for a charitable bingo license renewal fell under exception (C) of R. C. 119.06 to be without merit. Appellant did not argue this issue on appeal to this court.

[7] The final three paragraphs of R. C. 119.06 provide that:

"Every agency shall afford a hearing upon the request of a person whose application for a license has been rejected and to whom the agency has refused to issue a license, whether it is a renewal or a new license, unless a hearing was held prior to the refusal to issue such license.

"When periodic registration of licenses is required by law, the agency shall afford a hearing upon the request of any licensee whose registration has been denied, unless a hearing was held prior to such denial.

"When periodic registration of licenses or renewal of licenses is required by law, a licensee who has filed his application for registration or renewal within the time and in the manner provided by statute or rule of the agency, shall not be required to discontinue a licensed business or profession merely because of the failure of the agency to act on his application. Action of an agency rejecting any such application shall not be effective prior to fifteen days after notice of the rejection is mailed to the licensee."

one specifically excepted from the definition of "adjudication" in R. C. 119.01 (D) and hence the corresponding pre-adjudication hearing requirement.

It is conceivable that a rejection of a license might constitute a ministerial act. For example, an application could be returned to the applicant with instructions to remedy incompleteness or to provide additional information. But, as was discussed above, the facts of this case demonstrate that more than a ministerial act was involved in the denial of the license renewal applications. Consequently, even if appellant's interpretation of the final three paragraphs of R. C. 119.06 is correct, it would not be dispositive of the case herein.

It must also be noted that R. C. Chapter 2915 does not specifically permit the suspension of a license without a hearing. R. C. 2915.08(B) simply provides, *inter alia,* that the Attorney General shall refuse to grant a bingo license to any organization or revoke a license where a violation of R. C. 2915.09(B) is found.

In summary, the hearing rights of applicants for licenses and permits are fixed by R. C. Chapter 119. Upon review of a permit application, the Attorney General can either decide to issue the permit or deny it. If a permit is issued, no opportunity for a prior hearing is required since no material facts are in contest and because the issuance of the permit is not an "adjudication" as defined by R. C. 119.01(D). If, however, a permit is denied, the applicant must be afforded an opportunity for a prior hearing under R. C. 119.06 unless the application is void on its face, does not present enough information to allow its issuance, or denial is not contested by the applicant.

This court is mindful that charitable bingo is a narrow exception to the overall prohibition against lotteries found in Section 6, Article XV of the Ohio Constitution and the gambling prohibitions of R. C. Chapter 2915. Our holding today, however, should not prove unduly troublesome or harmful. R. C. 2915.08(A) provides that applications for license renewal need not be made until December 31. Indeed, many charities file for license renewal on the final day. Time is required for the Attorney General to act on these applications, and R. C. 119.06 provides that an applicant may operate pursuant to its

8

previous year's license until the Attorney General acts on its application.

Allowing a charity to continue bingo operations pending a pre-adjudication hearing does not subject the public to any greater harm than allowing a charity to continue bingo operations pending the Attorney General's action on its permit application. The General Assembly has provided a statutory framework for timely hearings. R. C. 119.07 provides that adjudication hearings must be set within 15 days but not earlier than 7 days after a request for a hearing is received. The statutory mandate to regulate gambling operations under R. C. Chapter 2915 [8] is in no way hindered by affording a pre-adjudication hearing to license applicants.

In light of this court's holding that the charities are entitled to a pre-adjudication hearing under the provisions of R. C. 119.06, it is unnecessary to consider whether due process mandates a hearing under the facts of this case.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER and C. BROWN, JJ., concur.

HOLMES, J., concurs in the judgment.

KRUPANSKY, J., dissenting. I respectfully dissent for the following reasons: (1) the rejection of applications for charitable bingo licenses is a ministerial act not subject to the prior hearing requirements found in R. C. 119.06; and (2) a requirement that a bingo licensee terminate operations under an expired license prior to a hearing on the rejection of its application for a new license does not conflict with due process.

R. C. 119.06 provides in relevant part:

"No *adjudication order* shall be valid unless an opportunity for a hearing is afforded in accordance with sections 119.01 to 119.13, inclusive, of the Revised Code. * * * " (Emphasis added.)

---

[8] Appellant is not totally without recourse. Ohio's Charitable Bingo Act, R. C. 2915.07 through 2915.12, not only regulates the operation of charitable bingo but also provides for criminal penalties ranging from minor misdemeanors to felonies of the fourth degree for violations thereof.

Furthermore, R. C. 119.01(D) defines "adjudication" to mean," * * * the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature."

Relying upon these two statutes the majority concludes appellant's review of bingo license renewal applications constitutes an "adjudication" subject to the hearing requirements of R. C. 119.06. The majority also denies appellant's action falls within the "acts of a ministerial nature" exception of R. C. 119.06, since the procedure used by appellant in considering the applications "involved judgment and deliberation." It is difficult to visualize any conduct which is totally devoid of the elements of "judgment" and "deliberation," however, appellant's actions in the instant case appear to come as close as possible to the definition of "ministerial act" found in the majority opinion. In examining a bingo license renewal application the appellant simply consults the mandates of R. C. Chapter 2915 to see if the applicant qualifies for a license. The applicant is either entitled to a license or it is not; the reviewer's "own judgment" can not alter this outcome. I see no difference in the procedure in a license renewal as compared to the initial review in granting or rejecting a license.

The majority predicated its holding upon the provisions of R. C. 119.06, and therefore, does not reach the issue of whether due process requires a hearing for these charities prior to the mandatory termination of their operations. The Court of Appeals, however, repeatedly emphasized " * * * once a license is issued, the holder of such license has a valuable private interest, and whether it is viewed as a right or a privilege, it is the nature of the interest that entitles the licensee to adequate procedural due process prior to the termination of such interest." I strongly disagree. These licenses are granted for a period of *one year only*. Once that license has expired its prior holder has no vested right which must be protected by due process. An organization whose license for renewal has been rejected stands in the same position as an

organization which has never held a license. I admit due process dictates the following of certain procedures when appellant revokes a license prior to its expiration, however, the same procedural safeguards do not apply in the case of a license renewal.

The judgment expressed by the majority will allow applicants whose license renewals are rejected to continue operating indefinitely with no license, *i.e.,* until an adjudicatory hearing is completed. The unsuccessful applicant is able to request postponements and continuances in the proceedings, thus greatly extending its time of operation and greatly hindering the Attorney General in his attempts to terminate illegal bingo. The majority opinion has tremendously reduced the effectiveness of the Attorney General to regulate bingo operations throughout the state. In my opinion this is contrary to the intent of the General Assembly. The courts should not foster a system which contains such an obvious opportunity for abuse.

Appellees are entitled to a hearing on appellant's decision to deny the renewal of their charitable bingo licenses, but there is nothing to indicate any requirement that a *pretermination* hearing be held. Therefore, I would reverse the Court of Appeals.