**WASTE MANAGEMENT OF OHIO, INC., Appellee and Cross–Appellant,**

v.

**BOARD OF HEALTH of the CITY OF CINCINNATI
et al., Appellants and Cross–Appellees.**

[Cite as *Waste Mgt. of Ohio v. Cincinnati Bd. of Health,*
159 Ohio App.3d 806, 2005-Ohio-1153.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 04AP–437, 04AP–433, 04AP–717 and 04AP–719.

Decided March 17, 2005.

808

Frost Brown Todd L.L.C., Paul W. Casper Jr., Terrence M. Fay, and Steven M. Wesloh; and Robert E. Leininger, for Waste Management of Ohio, Inc.

Terrence A. Nestor, for Cincinnati Board of Health.

The Phillips Law Firm and John H. Phillips, for Communities United For Action.

---

FRENCH, Judge.

{¶ 1} These consolidated cases arise from the attempted licensing of a solid waste transfer station in Cincinnati, Ohio. For the reasons we state here, we affirm the decisions of the Environmental Review Appeals Commission ("ERAC"), which reversed the decisions of the Cincinnati Board of Health and ordered the board to issue the licenses.

{¶ 2} Waste Management of Ohio, Inc. ("WMO"), is a wholly owned subsidiary of Waste Management, Inc. ("MWI"), the largest solid waste service provider in the United States. WMO owns a 93–acre tract of land located within Cincinnati, commonly referred to as the Environmental Land Development Associates (or "ELDA") complex. The complex includes a solid waste landfill, the "ELDA landfill," which closed in 1998.

{¶ 3} After the ELDA landfill closed, WMO began to consider other possibilities for disposing of the waste it continued to collect as part of its Cincinnati-based hauling business. WMO considered two possibilities: (1) constructing a transfer station, at which WMO could transfer the collected local waste to larger trucks for delivery to another WMO facility outside the Cincinnati area, and (2) constructing a recycling facility, at which WMO could sort the collected local waste and then transfer recyclable material off site. From a construction and design perspective, the only difference between a recycling center and a solid waste transfer station is the operational equipment.

{¶ 4} While considering these options, WMO discussed with Ohio EPA staff the permit requirements for transfer and recycling facilities. Ohio EPA staff informed WMO that there was no permit requirement for the installation or operation of a recycling facility but that an operator must recycle a certain percentage of the incoming waste to qualify as a "legitimate recycling center" under Ohio EPA's rules. WMO also discussed with Ohio EPA the possibility of constructing and operating a recycling center and then using the center as a transfer facility, which requires both installation and operational permits.

{¶ 5} On May 29, 1998, WMO applied to Ohio EPA for permits to install ("PTIs") a new facility, which it identified on an amended application as the "ELDA Recycling and Disposal Facility Transfer Station." WMO applied for

two PTIs, one permit for the facility as a source of air pollution (an "air PTI") and one permit for the facility as a source of solid waste handling (a "solid waste PTI").

{¶ 6} On July 1, 1998, Ohio EPA held a public information session at a local community center. WMO and Ohio EPA personnel discussed design features of the proposed project and explained the permitting process and siting criteria. They also invited and heard comments regarding the facility. A number of citizens expressed concerns regarding truck traffic, possible odors, possible groundwater contamination, and WMO's consideration of other locations.

{¶ 7} On September 30, 1998, Ohio EPA issued the air permit, which authorized WMO to install roadways for the proposed facility.

{¶ 8} On February 4, 1999, Ohio EPA held a public hearing regarding a draft solid waste permit for the facility. A number of citizens again raised concerns about the facility.

{¶ 9} On November 22, 2000, WMO began construction at the site. Because it had not yet received from Ohio EPA a permit to install or operate a solid waste facility, WMO commenced construction of a recycling facility, which did not require a permit from Ohio EPA.

{¶ 10} On February 28, 2001, Ohio EPA issued a solid waste permit, which authorized WMO to install a solid waste transfer facility at the ELDA complex. One of the conditions in the permit required WMO to notify both Ohio EPA and the Cincinnati Health Department of the construction starting date prior to the start of construction to facilitate construction-related inspections. Accordingly, by letter dated April 18, 2001, a WMO official informed the Cincinnati Health Department that WMO had begun construction on November 22, 2000. The letter stated, "Waste Management decided to proceed and construct a Recycling Facility that could be utilized as a transfer station if and when a permit was issued. This was done following several discussions with the agency. Since a permit has been issued we will proceed with construction and plans to operate as a transfer station."

{¶ 11} Under Ohio law, a solid waste transfer facility requires both an installation permit and an operating license. Only Ohio EPA may issue an installation permit (or PTI), following extensive agency review. However, R.C. 3734.04 authorizes approved boards of health to consider and issue operating licenses for solid waste facilities located within their jurisdiction.

{¶ 12} Pursuant to R.C. 3734.08, Ohio EPA has authorized the Cincinnati Board of Health to issue solid waste annual operating licenses. On October 16, 2001, WMO submitted to the board an application for a 2002 license to operate the solid waste transfer facility at the ELDA complex.

{¶ 13} The board formally considered WMO's license application at its February 26, 2002 meeting. At that meeting, the board accepted comments regarding the application. It also discussed the criteria a board of health must consider when determining whether to grant an operating license for a solid waste transfer station. Thereafter, the board adopted Resolution 2002–08, in which it denied WMO's application for an operating license. The resolution stated:

WHEREAS, the Board of Health has reviewed pertinent information, referred to as the Record for the Waste Management of Ohio Solid Waste Transfer Station License Application, in the Board's consideration of the application of Waste Management of Ohio, Inc.; now, therefore,

BE IT RESOLVED, by the Board of Health of the City of Cincinnati, State of Ohio,

Section 1. That the Board of Health does not find that Waste Management of Ohio, Inc. meets the conditions for issuance of a license under Ohio Revised Code Section 3734.44.

Section 2. That the Board of Health hereby denies the application for the license to operate the proposed solid waste transfer station at 5701 Este Avenue.

{¶ 14} On March 28, 2002, WMO filed a notice of appeal of the 2002 license denial to ERAC. WMO alleged multiple assignments of error related to the lawfulness and reasonableness of the board's denial.

{¶ 15} On May 7, 2002, Communities United for Action ("CUFA") filed a motion to intervene as a party in the ERAC appeal of the 2002 license denial. ERAC granted that motion on May 29, 2002.

{¶ 16} On September 30, 2002, while the appeal of the 2002 license denial was pending before ERAC, WMO submitted to the board an application for a 2003 license to operate the solid waste transfer facility at the ELDA complex. In support of its application, WMO relied upon the record submitted in support of its 2002 license application.

{¶ 17} On November 20, 2002, ERAC ordered the board to provide WMO with the specific provisions of R.C. 3734.44 upon which it relied to deny WMO's application for a 2002 solid waste license. The board did not respond to, or otherwise comply with, ERAC's order.

{¶ 18} On December 10, 2002, the board issued Board of Health Resolution 2002–24, which denied the 2003 license application. The resolution stated:

BE IT RESOLVED, by the Board of Health of the City of Cincinnati, State of Ohio,

Section 1. That the Board of Health is denying Waste Management of Ohio, Inc.'s 2003 license to operate a solid waste transfer station for the reasons of

holding in abeyance (collateral estoppel) pending a decision of ERAC in Case No. ERAC 315088 and based on the 2002 license Record filed with ERAC and the letter from Waste Management.

Section 2. That the Board of Health hereby denies the application for the 2003 license to operate the proposed solid waste transfer station at 5701 Este Avenue for the reasons set forth in Section 1 hereof.

{¶ 19} On January 10, 2003, WMO filed a notice of appeal with ERAC, alleging multiple assignments of error regarding the board's denial of the 2003 license. ERAC consolidated the appeal of the 2002 license denial and the appeal of the 2003 license denial appeal.

{¶ 20} ERAC conducted a de novo hearing from July 21, 2003 through July 30, 2003.

{¶ 21} On September 30, 2003, WMO submitted to the board an application for a 2004 license to operate the ELDA transfer station. The parties agreed to postpone any action on the 2004 license application until after ERAC rendered its opinion on the 2002 and 2003 license denials.

{¶ 22} On March 25, 2004, ERAC issued findings of fact, conclusions of law, and a final order, and, on March 31, 2004, a correction to that order. ERAC vacated the board's decisions to deny WMO 2002 and 2003 licenses to operate the solid waste transfer facility at the ELDA complex and remanded the case to the board for action consistent with the opinion.

{¶ 23} All parties appealed to this court, where we consolidated the 2002 and 2003 license appeals for purposes of record filing, briefing, and argument.

{¶ 24} On April 27, 2004, the board adopted Resolution 2004–13, in which it denied WMO's application for a 2004 license to operate the ELDA transfer station. The resolution provided:

WHEREAS, the Board of Health believes that [WMO's] 2004 application to operate a solid waste transfer station should be denied pending a decision from the Tenth District Appellate Court in Case Nos. ERAC 315088 and ERAC 315234 on [WMO's] 2002/2003 licenses to operate a solid waste transfer station at 5701 Este Ave., Cincinnati, Ohio; and

WHEREAS, the Board of Health has been advised that it is required to take action on [WMO's] 2004 license application to operate a solid waste transfer station; now, therefore,

BE IT RESOLVED, by the Board of Health of the City of Cincinnati, State of Ohio,

Section 1. That the Board of Health is denying [WMO's] 2004 license to operate a solid waste transfer station for the reasons set forth in its denial of

the 2002 and 2003 licenses and based on the 2002 license Record before the Board and presented to ERAC as currently on Appeal to the Tenth District Appellate Court.

Section 2. That the Board of Health hereby denies the application for the 2004 license to operate the proposed solid waste transfer station at 5701 Este Avenue for the reasons set forth in Section 1 hereof.

{¶ 25} WMO appealed the 2004 license denial to ERAC and immediately moved for summary judgment in its favor.

{¶ 26} On June 16, 2004, ERAC issued an order that granted summary judgment in favor of WMO, reversed the board's denial of the 2004 license, remanded the matter to the board, and ordered the board to issue the 2004 license immediately.

{¶ 27} The board and CUFA appealed the June 16, 2004 order to this court, and WMO cross-appealed. This court consolidated the 2004 license appeals with the 2002 and 2003 license appeals already pending, for purposes of argument.

{¶ 28} Before addressing the merits of these cases, we first address the parties' motions.

{¶ 29} WMO has moved to dismiss CUFA's notices of appeal to this court. WMO argues that CUFA was not a "party," as R.C. 3745.04 defines that term, in the underlying actions and, therefore, lacks standing to appeal ERAC's decision.

{¶ 30} On May 29, 2002, ERAC issued an order that allowed CUFA to intervene in the proceedings before it, finding: "After a review of the Commission's Rule regarding intervention (Ohio Administrative Code Section 3746–5–04), as well as the various filings in this matter, the Commission hereby rules to grant CUFA intervenor status as a Co–Appellee." The cited rule, Ohio Adm.Code 3746–5–04, authorizes ERAC to "designate the intervenor as a party to such an extent, and upon such terms, as the commission shall deem to be in accord with the statutes and rules." ERAC so designated CUFA as an appellee in the proceedings regarding the 2002 license, and by agreement of the parties, ERAC consolidated the 2002 license appeal with the 2003 license appeal. Thus, CUFA was a party to the consolidated ERAC proceedings. R.C. 3745.06 provides: "Any party adversely affected by an order of [ERAC] may appeal to the court of appeals of Franklin county * * *." As a party to the ERAC proceedings, CUFA properly appealed ERAC's order to this court. On these grounds, we deny WMO's motion to dismiss CUFA's notices of appeal regarding the 2002 and 2003 licenses (case Nos. 04AP–443 and 04AP–444).

{¶ 31} As to CUFA's appeal of ERAC's order regarding the 2004 license denial (case No. 04AP–717), however, we agree with WMO that CUFA was not a

party to that proceeding and, therefore, lacks standing to appeal that order to this court. Although CUFA petitioned ERAC for leave to intervene in the 2004 license appeal, by order and entry dated June 15, 2004, ERAC denied CUFA's intervention motion. CUFA did not appeal that denial. CUFA counters that it intended to appeal both the final order regarding the 2004 license and ERAC's order denying its intervention status. To that end, CUFA points out that even though its July 16, 2004 notice of appeal to this court states only that CUFA is appealing from ERAC's "July 16, 2004 [sic]" order, CUFA identified ERAC's denial of intervention as an assignment of error on the court's docketing statement. We need not decide whether CUFA's notice of appeal was sufficient because, even if ERAC's denial of intervention were properly before us, CUFA presents no grounds sufficient to overturn that denial. As CUFA has acknowledged before this court, ERAC has discretion to allow or deny intervention. See Ohio Adm.Code 3746–5–04. Given ERAC's subsequent summary disposition of the 2004 license appeal, as well as the board's active participation in opposition to that disposition, ERAC did not abuse its discretion by denying CUFA the opportunity to participate in the 2004 license appeal.

{¶ 32} Because CUFA was not a party to the 2004 license appeal below, we grant WMO's motion to dismiss CUFA's notice of appeal in case No. 04AP–717, thereby dismissing that appeal. We will consider CUFA's brief filed in case No. 04AP–719 as an amicus brief only.

{¶ 33} WMO also filed motions to dismiss the board's notices of appeal to this court. WMO argues that the board was not "adversely affected" by ERAC's orders and, therefore, lacks standing to appeal those orders. We disagree.

{¶ 34} WMO argues that, while a party to the ERAC proceedings, the board was not "adversely affected" by the ERAC orders and, therefore, does not have standing to appeal under R.C. 3745.06. Rather, the board and its members, WMO argues, "have no more direct interest in the result of an ERAC appeal reviewing whether the board's decision was consistent with law and fact than a common pleas court judge has in the result of a similar review of one of its decisions by a court of appeals." In support, WMO cites *Petitioners for Incorporation v. Twinsburg Twp. Bd. of Trustees* (1965), 4 Ohio App.2d 171, 33 O.O.2d 230, 211 N.E.2d 880. In that case, the Ninth District Court of Appeals held that a local board of township trustees lacked standing to appeal a common pleas court decision that reversed a prior decision of the board. Id. at 177, 33 O.O.2d 230, 211 N.E.2d 880.

{¶ 35} The Ninth District's decision in *Petitioners for Incorporation* is consistent with many other Ohio decisions that begin with the basic premise that administrative agencies, in general, cannot participate in an appeal regarding

their own rulings. In *In re Kerry Ford, Inc.* (1995), 110 Ohio App.3d 611, 612–613, 674 N.E.2d 1249, this court stated:

While an administrative agency is granted the statutory right, pursuant to R.C. 119.12, to appeal questions of law relating to the constitutionality, construction, or interpretation of statutes and rules of the agency, in general, "an administrative agency has no partisan interests in its decisions." *Miller v. Unemp. Comp. Bur.* (1954), 160 Ohio St. 561, 563, 52 Ohio Op. 451, 452, 117 N.E.2d 427, 428. *"Only in a very few cases has the General Assembly given the right to a board to be a 'referee' and a 'litigant' at the same time."* *In re Highland Holiday Subdivision* (1971), 27 Ohio App.2d 237, 238, 56 Ohio Op.2d 404, 405, 273 N.E.2d 903, 905. * * *

The Ohio Supreme Court has, under limited circumstances, held that an administrative agency may participate as a party in appellate review of its decisions. *Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities v. Professionals Guild of Ohio* (1989), 46 Ohio St.3d 147, 545 N.E.2d 1260. In *Hamilton Cty. Bd. of Mental Retardation,* the court held that the State Employees Relation Board ("SERB") may participate as a party in appellate review of its decisions. The court reasoned that SERB, "in addition to its quasi-judicial function, is given enforcement powers by R.C. Chapter 4117." *Id.* at 154, 545 N.E.2d at 1268. The court made clear, however, that its decision did not stand for the proposition that SERB was a necessary or indispensable party or that it should participate in every review proceeding. *Id.*

(Emphasis added.) Based on these principles, and citing *DiCillo & Sons, Inc. v. Chester Zoning Bd. of Appeals* (1952), 158 Ohio St. 302, 49 O.O. 135, 109 N.E.2d 8, this court ruled that the Ohio Motor Vehicle Dealers Board was not a proper party to an appeal when it could not show that the remaining parties would not adequately represent the public's interest or that the board's participation was necessary or indispensable to the resolution of the matter. *Kerry Ford,* 110 Ohio App.3d at 614, 674 N.E.2d 1249.

{¶ 36} Here, we need look no further than the applicable statutory framework to find that the General Assembly has made Ohio EPA and, where appropriate, authorized boards of health, both referee and litigant in environmental licensing appeals. R.C. 3745.04 provides that a person appealing to ERAC

shall be known as appellant, and the director and any party to a proceeding substantially supporting the finding from which the appeal is taken shall be known as appellee, except that when an appeal involves a license to operate a disposal site or facility, *the local board of health* or the director of environmental protection, and any party to a proceeding substantially supporting the

finding from which the appeal is taken, *shall, as appropriate, be known as the appellee. Appellant and appellee shall be deemed to be parties to the appeal.* (Emphasis added.) Thus, R.C. 3745.04 expressly designates a local board of health as a party to the ERAC proceedings.

{¶ 37} R.C. 3745.06 further provides: "Any party adversely affected by an order of [ERAC] may appeal to the court of appeals of Franklin county * * *." This provision does not state expressly that Ohio EPA or an authorized board of health may appeal from an ERAC order. It does, however, speak to the payment of security for costs and clearly anticipates the participation of the state or other political subdivision as an appellant, providing: "The appellant, other than the state or a political subdivision, or an agency of either, or any officer of them acting in a representative capacity, shall provide security for costs satisfactory to the court."

{¶ 38} WMO argues that as an independent arbiter, the board of health is not "adversely affected" by an ERAC order that overturns the board's licensing decision. Under R.C. 3745.04, however, the board of health is more than an independent arbiter; at ERAC, it becomes a party with a specific interest, i.e., defense of its licensing decision. An ERAC order contrary to that licensing decision has an obvious and adverse impact on board procedure, policy, and decision-making, at least from the board's perspective.

{¶ 39} Finally, while not controlling, we note that this court, as well as the Ohio Supreme Court, has for many years heard appeals filed by Ohio EPA or a local board of health from an ERAC order. That participation appears to be consistent with legislative intent. On these grounds, we deny WMO's motions to dismiss the board's notices of appeal (case Nos. 04AP–437, 04AP–438, and 04AP–719).

{¶ 40} Next, CUFA has moved to dismiss all of the appeals before this court, including its own appeal, for lack of subject-matter jurisdiction because the board failed to hold adjudication hearings on the license applications. That failure, CUFA argues, divested ERAC and, therefore, this court, of jurisdiction. We disagree.

{¶ 41} CUFA looks to Ohio Supreme Court decisions demanding strict compliance with R.C. 119.06, which affords an applicant an opportunity for a hearing prior to the issuance of an adjudication order. See, e.g., *Gen. Motors v. McAvoy* (1980), 63 Ohio St.2d 232, 17 O.O.3d 143, 407 N.E.2d 527; and *Boys Town v. Brown* (1982), 69 Ohio St.2d 1, 23 O.O.3d 1, 429 N.E.2d 1171. However, CUFA's reliance on these cases to make a jurisdictional argument is misplaced. While they certainly affirm the necessity for an adjudication hearing under certain circumstances, the cited cases do not stand for the proposition that if an

administrative agency issues a denial without affording an applicant an opportunity for a hearing, then an appellate body has no jurisdiction to review that denial. Rather, the Supreme Court has said, "Subject matter jurisdiction is a court's power to hear and decide a case on the merits. *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 61 O.O.2d 335, 290 N.E.2d 841, paragraph one of the syllabus. 'Jurisdiction does not relate to the *rights of the parties*, but to the *power of the court.*'" (Emphasis sic.) *State ex rel. Tubbs Jones v. Suster* (1998), 84 Ohio St.3d 70, 75, 701 N.E.2d 1002, quoting *Executors of Long's Estate v. State* (1926), 21 Ohio App. 412, 415, 153 N.E. 225.

{¶ 42} Here, pursuant to R.C. 3745.04, ERAC holds express power to determine the legal validity of a board's licensing decisions, and, pursuant to R.C. 3745.06, this court holds express power to review ERAC's decision. On appeal to ERAC, a party (presumably, WMO) could have challenged the board's orders on the grounds that they were procedurally defective. No party did so. The parties having failed to raise this nonjurisdictional issue below, we decline to address it. *State ex rel. Zollner v. Indus. Comm.* (1993), 66 Ohio St.3d 276, 278, 611 N.E.2d 830 ("A party who fails to raise an argument in the court below waives his or her right to raise it" on appeal). See, also, *Halleen Chevrolet, Inc. v. Gen. Motors Corp.* (June 28, 2001), Franklin App. No. 00AP–1454, 2001 WL 722101; *In re Rocky Fork Lake Sanitary Dist.* (Aug. 25, 1998), Highland App. No. 98CA1, 1998 WL 548745. On these grounds, we deny CUFA's motions to dismiss these appeals for lack of subject-matter jurisdiction.

{¶ 43} Having addressed the parties' motions, we turn now to the merits of these consolidated appeals. At the outset, given the complexity of this matter, we should clarify what lies before us. In short, the board of health denied WMO's application for a 2002 license to operate a solid waste transfer station; WMO appealed that denial to ERAC, and CUFA intervened in that appeal. While the 2002 license appeal was pending before ERAC, the board of health denied WMO's application for a 2003 license to operate the transfer station; WMO appealed that denial to ERAC, and ERAC consolidated the 2003 license appeal with the 2002 license appeal already pending. After a de novo hearing and by order dated March 25, 2004, ERAC reversed the board's 2002 and 2003 license denials. The board (case Nos. 04AP–437 and 04AP–438) and CUFA (case Nos. 04AP–443 and 04AP–444) appealed to this court, and WMO cross-appealed. Just after ERAC issued its order on the 2002 and 2003 licenses, the board denied WMO's application for a 2004 license. WMO appealed that denial to ERAC. By order dated June 16, 2004, ERAC reversed the board's 2004 license denial. The board (case No. 04AP–719) and CUFA (case No. 04AP–717) appealed to this court, and WMO cross-appealed. Because we have dismissed CUFA's appeal of the 2004 license denial, only the board's appeal remains to challenge ERAC's

decision on the 2004 license denial. For purposes of clarity, we will address the 2004 license denial order separate from the 2002 and 2003 license denial order, which we address first.

{¶ 44} With respect to ERAC's March 25, 2004 order, appellant CUFA raises the following assignments of error:

[I.] The Environmental Review Appeals Commission erred to the prejudice of appellees when it applied an incorrect standard of review in reaching its decision to vacate the license denial from the Board of Health of the City of Cincinnati.

[II.] The Environmental Review Appeals Commission erred in overruling Communities United for Action's motion to dismiss or in the alternative motion for summary judgment.

[III.] The Environmental Review Appeals Commission erred by not allowing Communities United for Action's expert witnesses to testify as to their expert opinions in this case in order to show that the Cincinnati Board of Health had a lawful and reasonable basis for denying the license to operate the facility.

{¶ 45} R.C. 3745.06 sets out this court's standard for reviewing ERAC orders. We "shall confirm the order" if we find "upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 3745.06. "In the absence of such a finding," the court "shall reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law." Id. Accord *Save the Lake v. Schregardus* (2001), 141 Ohio App.3d 530, 752 N.E.2d 295.

{¶ 46} We first address CUFA's assertion that ERAC applied the wrong standard of review. R.C. 3745.05 provides: "If, upon completion of the hearing, the commission finds that the action appealed from was lawful and reasonable, it shall make a written order affirming the action, if the commission finds that the action was unreasonable or unlawful, it shall make a written order vacating or modifying the action appealed from." This standard does not allow ERAC to substitute its judgment for that of the director (or a board of health) or to stand in the place of the director (or the board). *CECOS Internatl., Inc. v. Shank* (1992), 79 Ohio App.3d 1, 6, 606 N.E.2d 973. The term "unlawful" means "that which is not in accordance with law," and the term "unreasonable" means "that which is not in accordance with reason, or that which has no factual foundation." *Citizens Commt. v. Williams* (1977), 56 Ohio App.2d 61, 70, 10 O.O.3d 91, 381 N.E.2d 661.

■ {¶ 47} In its March 25, 2004 order, ERAC acknowledged this standard of review, stating: "Further, 'the ultimate factual issue to be determined by the Commission' is whether a valid factual foundation exists to support the decision under appeal and not whether the action is the best or most appropriate action or if the Commission would have taken the same action." Quoting *Citizens Commt.*, id. at 70, 10 O.O.3d 91, 381 N.E.2d 661; *Swan Super Cleaners, Inc. v. Tyler* (1988), 48 Ohio App.3d 215, 220, 549 N.E.2d 526. Its duty, ERAC found, was "to determine whether the actions of the Cincinnati Board of Health in denying operating licenses for WMO's Este Avenue solid waste transfer station were unlawful or unreasonable." (Footnote omitted.)

{¶ 48} As to its claim that ERAC applied the wrong standard of review, CUFA points to no specific wrongful application. Rather, CUFA cites evidence that it claims supports a finding that the board's action was lawful and reasonable and cites the board's statutory authority under R.C. 3734.08 to make "lawful" orders. These citations alone do not support an argument that ERAC applied the wrong standard to weigh the evidence before it. Rather, the substance of CUFA's argument is that a "valid factual foundation exists" to support the board's decision and, therefore, ERAC should have upheld it. CUFA's disagreement, then, is not with the standard ERAC used to review the board's decision, but with ERAC's application of that standard. Finding that ERAC articulated and applied the correct standard of review, we deny CUFA's first assignment of error. To the extent that CUFA has raised questions concerning the substance of ERAC's decision, we address those questions in combination with the board's assignment of error, below.

■ {¶ 49} Next, we address CUFA's claim that ERAC erred when it denied CUFA's motion to dismiss or, alternately, its motion for summary judgment. Whether we view CUFA's motion as a motion to dismiss or a motion for summary judgment, our review is de novo. *Crestmont Cleveland Partnership v. Ohio Dept. of Health* (2000), 139 Ohio App.3d 928, 936, 746 N.E.2d 222 (standard on motion to dismiss); *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841 (standard on motion for summary judgment). In its motion to ERAC, CUFA argued that as of January 1, 2001, Waste Management of Ohio, Inc., a Delaware corporation—the company that applied for the permits to install the solid waste transfer station—went out of business and no longer existed. A different entity, Waste Management of Ohio, Inc., an Ohio Corporation, CUFA argues, proceeded with the request for an operating license. Because the board had authority to grant an operating license only to an entity that held an installation permit, CUFA concludes that the board had no authority to issue a license to Waste Management of Ohio, Inc., an Ohio corporation.

{¶ 50} The premise of CUFA's motions is that WMO violated Ohio Adm.Code 3745–31–02(A)(3). That section provides: "The transferee of any permit to install shall assume personally the responsibilities of the original permit holder-transferor. [Ohio EPA] must be notified in writing of any transfer of a permit to install." Because WMO failed to notify Ohio EPA of the transfer of the air and solid waste permits for the transfer station, CUFA argues, WMO (Ohio) never actually held valid permits and the board never had authority to consider the license application. We disagree.

{¶ 51} In testimony and evidence before ERAC, WMO acknowledged and explained the organizational changes that occurred as a result of a 1998 acquisition of its parent company, Waste Management, Inc., by USA Waste, Inc. WMO acknowledged that WMO (Delaware) applied for and received the air permit and applied for the solid waste permit. Evidence also shows that by letter dated November 9, 1999, counsel for WMO (Delaware) notified Ohio EPA of the upcoming corporate reorganization. That notice stated: "The * * * ELDA transfer station[ ] will no longer be owned by WMO but will be held by USA Waste of Ohio, Inc.," which would change its name to Waste Management of Ohio, Inc., as provided in the letter. Therefore, contrary to CUFA's assertions, WMO did notify Ohio EPA of the change in ownership and, accordingly, the transfer of the only permit it held at that time for the transfer station, the air permit. On February 28, 2001—more than 15 months after receiving WMO's initial written notice and 12 months after receiving a second notice, which reflects "many discussions" between Ohio EPA and WMO about the reorganization—Ohio EPA issued a solid waste permit to WMO, which by then had become WMO (Ohio). In contrast to the subterfuge CUFA alleges, the evidence shows that WMO was open about the changes and the need for Ohio EPA and local entities, including the Cincinnati Health Department, to transfer licenses.

{¶ 52} Based on the testimony and documents presented, ERAC concluded correctly that WMO (Ohio) had standing to apply for the operating licenses and that the board had authority to issue (or deny) the licenses to WMO (Ohio). For these reasons, we deny CUFA's second assignment of error.

{¶ 53} In its third assignment of error, CUFA challenges ERAC's exclusion of testimony by three witnesses: David Altman, Charles Reid, and Robert Galbraith. As to each of these witnesses, CUFA argues that the Rules of Evidence required admission of their testimony. As an administrative body, however, ERAC is not subject to the Rules of Evidence. *Orange City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 415, 417, 659 N.E.2d 1223 ("Evid.R. 101(A) does not mention administrative agencies as forums to which the Rules of Evidence apply"); *Tube City Olympic of Ohio, Inc. v. Jones,* Franklin App. No. 03AP–295, 2004-Ohio-1464, 2004 WL 583858, at ¶ 26.

Therefore, we review ERAC's decision to exclude the evidence under an abuse-of-discretion standard. Id.; see, also, *State v. Jones* (2000), 90 Ohio St.3d 403, 414, 739 N.E.2d 300 ("any question concerning the admission or exclusion of expert testimony is measured by the abuse-of-discretion standard"). Generally, "abuse of discretion" means more than an error of law or judgment. Rather, it implies that the tribunal's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 5 OBR 481, 450 N.E.2d 1140, citing *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 54} As to the testimony of David Altman, a licensed attorney, CUFA argues that he would have addressed "several unique questions on environmental law." ERAC granted a motion in limine by WMO to exclude the testimony. WMO argues that CUFA never proffered Altman's testimony at the de novo hearing and, therefore, that CUFA failed to preserve the issue for appeal. See *State v. Grubb* (1986), 28 Ohio St.3d 199, 203, 28 OBR 285, 503 N.E.2d 142 ("At trial, it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion *in limine*, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal"). In its briefs, CUFA cites no point in the record where it proffered this testimony at the hearing. However, from our review, it appears that John Phillips, representing CUFA, objected to the exclusion during the hearing and at least attempted to preserve the issue, albeit in the context of moving for a mistrial. There is no question that ERAC made its final determination to exclude the testimony during the hearing, and Vice Chairperson Mulrane explained the exclusion:

Mr. Phillips, once again, I think having Mr. Altman come in and tell us how to read the statute and regulations, that's what we're here for. That's what we do. You know, we don't need Mr. Altman, with all due respect to Mr. Altman. It's important to us to have the people who administer the statutes and regulations come in and tell us how they interpret them, but I don't think we need to march attorneys in here telling us how they interpret it. That's our job. That's what we do.

{¶ 55} The purpose of expert testimony is to aid and assist the trier of fact in understanding the evidence presented and in arriving at a correct determination of the litigated issues. *McKay Machine Co. v. Rodman* (1967), 11 Ohio St.2d 77, 81–82, 40 O.O.2d 87, 228 N.E.2d 304. However "an expert's interpretation of the law should not be permitted, as that is within the sole province of the court." *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7, 19, 19 OBR 71, 482 N.E.2d 955. Here, to the extent that this question

is even properly before us, we accept ERAC's reasoning for the exclusion, i.e., expert testimony regarding legal issues is simply not helpful. Therefore, ERAC did not abuse its discretion when it excluded Altman's testimony.

{¶ 56} As to Charles Reid, CUFA argues that it offered Reid, President of the Board of Health of the Hamilton County General Health District, "as an expert as to whether the decision reached by the Cincinnati Board of Health could be supported as both lawful and reasonable given the Certified Record from the proceedings that led up to Appellant [WMO] being denied a license to operate this solid waste transfer facility." CUFA acknowledges that this testimony went to the ultimate issue before ERAC. CUFA and WMO agree that the Ohio Rules of Evidence allow the admission of testimony that embraces an ultimate issue to be decided by the trier of fact and that testimony otherwise admissible is not objectionable solely because it embraces an ultimate issue. Evid.R. 704; *Schaffter v. Ward* (1985), 17 Ohio St.3d 79, 81, 17 OBR 203, 477 N.E.2d 1116. However, "it is within the sound discretion of a trial court to refuse to admit the testimony of an expert witness on an ultimate issue where such testimony is not essential to the [trier of fact's] understanding of the issue and the [trier of fact] is capable of coming to a correct conclusion without it." *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 148, 524 N.E.2d 881. Here, ERAC allowed Reid to testify as an expert in business analysis but did not allow him to testify as to whether the board's denial was lawful and reasonable. We agree with ERAC that the latter question was well within its own expertise and understanding, and a question upon which it could rule based on its own review of the evidence before it. Therefore, ERAC did not abuse its discretion when it excluded a portion of Reid's testimony.

{¶ 57} As to Robert Galbraith, CUFA argues that ERAC erred when it refused to allow Galbraith to testify as to whether WMO was in substantial compliance with the environmental laws. ERAC qualified Galbraith as an expert in hydrogeology and groundwater issues, and he provided substantial testimony on that basis. However, ERAC limited his testimony regarding compliance. As we concluded above, we find that ERAC did not abuse its discretion when it excluded this testimony because, first, the question whether WMO was in "substantial compliance" with Ohio environmental laws is a legal question, which requires no expert testimony, and, second, the issue of substantial compliance is one that is well within ERAC's expertise, based on its own review of the record.

{¶ 58} For these reasons, we overrule CUFA's third assignment of error as to ERAC's March 25, 2004 order.

{¶ 59} With respect to ERAC's March 25, 2004 order, appellant board of health raises the following assignment of error:

ERAC acted contrary to law by vacating the Board of Health's denial of Waste Management of Ohio's license to operate its proposed waste transfer station.

{¶ 60} The board's first argument in support of its assignment is that ERAC did not defer to the board's interpretation of the licensing criteria but, instead, deferred to Ohio EPA's interpretation. Specifically, the board argues that ERAC deferred to Ohio EPA's narrow interpretation of the term "applicant" when determining whether WMO met the licensing criteria in R.C. 3734.44(A). In support, the board points to R.C. 3734.08, which authorizes Ohio EPA to approve local health districts as its designees for purposes of licensing solid waste facilities. As Ohio EPA's designee, the board argues, it holds independent authority to define and apply the licensing criteria, and ERAC should have deferred to that authority. (CUFA makes a similar argument as a basis for its first assignment of error.)

{¶ 61} R.C. 3734.44 provides:

Notwithstanding the provisions of any law to the contrary, no permit or license shall be issued or renewed by * * * a board of health:

(A) Unless * * * the board of health finds that the applicant, in any prior performance record in the transportation, transfer, treatment, storage, or disposal of solid wastes, infectious wastes, or hazardous waste, has exhibited sufficient reliability, expertise, and competency to operate the solid waste, infectious waste, or hazardous waste facility, given the potential for harm to human health and the environment that could result from the irresponsible operation of the facility * * *.

{¶ 62} R.C. 3734.41(A) defines the term "applicant" as "any person seeking a permit or license for an off-site facility." For purposes of this definition, Ohio Adm.Code 109:6–1–01(V) defines "person" as "any individual, business concern or governmental entity." And, for purposes of this definition, Ohio Adm.Code 109:6–1–01(D) defines "business concern" as "any corporation, association, firm, partnership, trust, sole proprietorship, or other form of commercial organization."

{¶ 63} Adopted in 1988, these provisions are part of a comprehensive statutory framework that requires a person or entity applying for a permit to install, or a license to operate, a solid waste facility to undergo a background check. This framework requires an applicant to submit information to the Attorney General, who conducts an investigation and prepares a report to Ohio EPA. The information includes in-depth disclosures concerning the financial and operational history of the applicant, as well as entities and individuals related to the applicant, including its officers, directors, and key employees. Under certain circumstances, the commission of certain crimes will disqualify an applicant; in others,

an applicant may demonstrate rehabilitation. In total, these provisions serve the General Assembly's stated purpose:

> To prevent either direct or indirect entry into the operations of the off-site solid waste disposal and transfer * * * industries of persons who are not competent and reliable or who have pursued economic gains in an occupational manner or context violative of the criminal code or civil public policies of this state, and it is to the end of excluding such persons from those industries that the regulatory and investigatory powers and duties provided in sections 3734.41 to 3734.47 of the Revised Code shall be exercised to the fullest extent consistent with law.

R.C. 3734.40(E).

{¶ 64} The board's February 26, 2002 order, which denied the 2002 license to WMO, stated only that the board "does not find that Waste Management of Ohio, Inc. meets the conditions for issuance of a license under Ohio Revised Code Section 3734.44." The board's December 10, 2002 order, which denied the 2003 license, relied on its 2002 license denial. Before ERAC, the board argued that Waste Management, Inc., the parent company of WMO, was the applicant for purposes of R.C. 3734.44. Because the background check revealed numerous civil and criminal proceedings involving Waste Management, Inc., the board argued, WMO did not meet the "reliability, expertise and competency" test of R.C. 3734.44; therefore, the board could not grant WMO a license.

{¶ 65} ERAC did not defer to the board's interpretation; rather, it deferred to Ohio EPA's definition of "applicant." Ohio EPA employee Sharon Gbur testified that when interpreting the term "applicant" for purposes of R.C. 3734.44(A), Ohio EPA considers the applicant to be the entity that has applied for a permit and that Ohio EPA considered the applicant in this matter to be Waste Management of Ohio. Thus, ERAC held, "in keeping with the Director's interpretation, the relevant licensing inquiry on the part of the Board of Health regarding the applicant's reliability, expertise and competency to operate the transfer station should have been limited to WMO."

{¶ 66} We begin with the principle that "[w]here the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph five of the syllabus. Here, we need only look at Ohio's statutory and regulatory definitions to conclude that the applicant for purposes of the ELDA transfer station is WMO. WMO sought a permit to install the facility, and Ohio EPA issued the permit to WMO. It was WMO, as a corporate entity, that applied for a license from the board. There is no doubt that WMO meets the definitions of "business concern," "person," and,

therefore, "applicant" under Ohio law. Therefore, ERAC's conclusion was correct.

{¶ 67} If the term "applicant" were not clear from the face of the statute, ERAC would properly defer to an agency's interpretation of the statutes the General Assembly directs it to implement. *State ex rel. Celebrezze v. Natl. Lime & Stone Co.* (1994), 68 Ohio St.3d 377, 382, 627 N.E.2d 538; *State ex rel. Brown v. Dayton Malleable* (1982), 1 Ohio St.3d 151, 155, 1 OBR 185, 438 N.E.2d 120. The General Assembly has directed Ohio EPA to implement the solid waste permitting and licensing statutes, and Ohio EPA has discretion to delegate that responsibility to a board of health. In some licensing situations, it may be necessary and appropriate for ERAC to defer to an interpretation offered by an authorized board of health. But to the extent interpretation is necessary and the board's interpretation of its responsibility conflicts with Ohio EPA's interpretation, ERAC correctly chooses to defer to Ohio EPA.

{¶ 68} The board counters that the "logical outcome" of Ohio EPA's (and ERAC's) limited interpretation of R.C. 3734.44(A) "is that any waste disposal company with a past history of noncompliance need only restructure itself [much like Waste Management does] into a new corporate entity to apply for a solid waste disposal license." The proper analysis, the board argues, "should include all of the relevant corporate entities, including Waste Management, Inc., and its worldwide affiliate corporations." In fact, an applicant's disclosure statement must include substantial background information regarding individuals and corporations that own or hold an interest in the applicant entity. See Ohio Adm.Code 109:6–1–02. In addition, where there is a change of ownership for the facility, the prospective owner must submit to another background check by the Attorney General, even before the change takes effect. R.C. 3734.42(F). In short, the General Assembly has taken into account the potential for nefarious motives and implemented a framework to address them. ERAC need go no further.

{¶ 69} Also in support of its assignment of error, the board argues that ERAC shifted the burden of proof from WMO to the board, contrary to the express provisions of the Ohio Administrative Code. The board's argument arises from prehearing attempts by WMO and ERAC to discern the basis of the board's denials. The board refused, and argues now that "[n]umerous reasons for the [board's] denials can be determined from the admitted certified record now before this court."

{¶ 70} We do not agree that ERAC's prehearing attempt to obtain information from the board translated into a shifting of the burden of proof at the de novo hearing. Rather, ERAC correctly articulated and followed statutory guidelines to apply that burden. ERAC stated:

The Tenth District Court of Appeals' decision in [*Columbus & Franklin Cty. Metro. Park Dist. v. Shank* (June 27, 1991), Franklin App. Nos. 90AP–516, 90AP–517, 90AP–518, 90AP–519, 90AP–520, and 90AP–521, 1991 WL 124410, affirmed (1992), 65 Ohio St.3d 86, 600 N.E.2d 1042], provides guidance to the Commission on how to proceed under these circumstances. In that case, the court stated that in those instances where no adjudication hearing was held below, "the applicant who seeks the issuance of a permit bears the burden of proof at the *de novo* hearing [before the Commission] * * * to prove entitlement to the requested permit." Applying that instruction to the facts before the Commission today, and noting that no adjudication hearing preceded the board's denial of the license applications, WMO, as applicant for the licenses, is required to produce evidence proving or demonstrating its entitlement to the licenses under appeal.

* * * Proving entitlement requires an affirmative demonstration on the part of WMO that it has satisfied the licensing requirements for solid waste transfer stations found in R.C. 3734.44(A) through (D), entitled "Conditions for issuance or renewal of * * * license." Accordingly, the Commission will now examine the evidence relative to R.C. 3734.44(A) through (D).

{¶ 71} We affirm the principle that in those cases where the director or a board of health has not conducted an adjudication, the applicant who seeks a permit bears the burden at the de novo hearing before ERAC of proof of entitlement to the requested permit. ERAC held to that principle here. As WMO points out, without specific reasons for the board's denial, it put on evidence to support each element of reliability, expertise, and competence. As the board points out, ERAC "concluded that WMO meets the criteria based on WMO's own retained expert, WMO's general operation without violations, and WMO's experience in the waste management industry." The board's objections to that conclusion are as follows.

{¶ 72} First, the board argues, "In reaching its conclusions, though, the Commission limited its analysis of 'reliability, expertise, and competence' to WMO, specifically excluding any evaluation of the parent and sister corporations of WMO, that is Waste Management, Inc., and its nationwide affiliate companies." We have already concluded, however, that ERAC correctly determined that the applicant for purposes of R.C. 3734.44(A) is WMO, not its parent or sister companies.

{¶ 73} Second, the board argues, "ERAC's conclusion ignores the long history of compliance issues at the ELDA landfill, including ongoing methane gas migration issues that continue to plague the local community." (CUFA makes similar arguments in support of its first assignment of error.) Far from ignoring compliance at the ELDA landfill, however, ERAC's findings of fact suggest that

it considered those issues carefully. ERAC had before it the testimony of numerous witnesses. CUFA's expert, Robert Galbraith, testified that methane gas was migrating from the site and that WMO was not adequately monitoring the groundwater. In contrast, Ohio EPA supervisor Sharon Gbur testified that there were no critical compliance problems and no unresolved enforcement actions pending against WMO facilities. Acknowledging that Ohio EPA had issued orders to WMO regarding gas problems at the site in 1997, ERAC concluded:

> WMO continues its efforts to control the methane at the site. Among other things, it has installed monitoring probes around the entire limits of waste, installed an extraction system to prevent the off-site migration of gas and worked with the City of Cincinnati's environmental consultant. [WMO] has received no Notices of Violation relative to the landfill or the methane issues either prior to, or since, the issuance of the orders.

{¶ 74} Based on this, as well as its other findings of fact, ERAC made the following legal conclusion:

> The majority of evidence relative to compliance indicates that, in general, WMO operates without violations, and, on the occasions that violations do occur, that the particular facility at issue corrects those violations to the satisfaction of the approved Board of Health or the Agency. Accordingly, the Commission finds that the record supports a finding that applicant WMO operates in substantial compliance with Ohio's environmental laws and has satisfied the requirements mandated by R.C. 3734.44(D).

Thus, contrary to the board's assertion, ERAC considered the history of compliance issues at the ELDA landfill.

{¶ 75} Third, as to its argument that ERAC misapplied the burden of proof, the board argues that ERAC substituted its own judgment for that of the board in regard to whether WMO had committed any of the disqualifying crimes identified in R.C. 3734.44(B). The board acknowledges that it did not specify any particular disqualifying crime under that section but states that "it is sufficient for the Board to state its collective finding that WMO did not meet the qualifications for licensure under R.C. 3744.44." As to this issue, ERAC relied on documentary evidence and testimony from Ohio EPA. Most significantly, ERAC considered evidence that Ohio EPA had initially requested more information from WMO regarding certain felony convictions. After receiving additional information, however, Ohio EPA concluded that no convictions or pending prosecutions for disqualifying crimes prohibited the issuance of a permit to WMO. Based on its review of R.C. 3734.44, as well as the evidence before it, ERAC made the legal determination that no disqualifying crimes existed.

{¶ 76} In short, ERAC's findings of fact and conclusions of law demonstrate that ERAC had before it reliable, probative, and substantial evidence to support its finding that WMO had met its burden to prove that it is entitled to a license to operate the ELDA transfer station.

{¶ 77} Finally, in support of its assignment of error, the board argues that ERAC's ruling "sanctions WMO's misrepresentation of its facility as a 'legitimate recycling facility' when it was never intended nor operated as a recycling facility." (Emphasis omitted.) The board states, "ERAC's ruling in this case has established a roadmap for all waste handlers who want to avoid obtaining the required PTI for a solid waste disposal facility: simply call it a recycling facility." The board and CUFA further suggest that, at a minimum, WMO's actions call their reliability into question. We disagree with appellants' characterization of WMO's actions and, therefore, with the conclusion the board and CUFA draw from those actions.

{¶ 78} Here, as we outlined above in our statement of the relevant facts, WMO acknowledged openly that it constructed a recycling facility as a contingency in case it could not obtain a permit to install a transfer station. WMO apparently met informally with Ohio EPA to discuss its plans to construct a recycling facility and to operate the facility as a transfer station if a permit was issued. This conversion to a transfer station would be relatively easy because the design and construction of the facility would be essentially the same whether WMO operated it as a recycling facility or as a transfer station. Only the internal equipment would be different.

{¶ 79} When WMO constructed the recycling facility, it followed Ohio EPA guidance, which allows the construction and operation of a recycling facility without a permit. But in order to maintain its status as a "legitimate recycling facility," for eight months out of 12, a certain percentage of the materials brought to the facility must be recyclables. The guidance itself includes options for a recycling facility that cannot meet this percentage: it must immediately begin to operate as a transfer facility and it must notify Ohio EPA of its intent to submit an application for a solid waste license or its intent to enter into a "second chance" six-month demonstration period, during which it gets another chance to prove its status as a recycling facility. In this way, Ohio EPA's guidance acknowledges that a facility may change from a recycling facility to a transfer facility—whether by mistake or design. Here, WMO complied with Ohio EPA guidance when it made the business decision to construct and operate a recycling facility and when it made known to Ohio EPA its intention to operate a transfer station. Thus, WMO's actions in this regard did not raise a legitimate question of reliability for purposes of R.C. 3734.44.

{¶ 80} For these reasons, we conclude that ERAC had before it reliable, probative, and substantial evidence to support its finding that WMO possesses sufficient reliability, expertise, and competence to operate a solid waste transfer station and that ERAC's finding was in accordance with law. Accordingly, we overrule the board's assignment of error.

{¶ 81} In each of the cases involving the 2002 and 2003 license-denial proceedings, WMO has filed a cross-appeal. In each cross-appeal, WMO raises the following assignments of error:

[I.] The ERAC erred to the prejudice of the cross-appellant by admitting into evidence over WMO's timely objection documents clearly not admissible, competent or probative of the facts relevant to the licensure of WMO's solid waste transfer station.

[II.] The ERAC committed error to the prejudice of the cross-appellant by failing to remand to the [board] with instructions to issue the requested licenses.

{¶ 82} In light of our disposition of appellants' assignments of error, however, WMO has suffered no prejudice from these alleged errors. Therefore, we need not reach WMO's assignments on cross-appeal. R.C. 2309.59 (requiring the court to disregard any error in the proceedings that "does not affect the substantial rights of the adverse party. No final judgment or decree shall be reversed or affected by reason of such error or defect"). See, also, *Pang v. Minch* (1990), 53 Ohio St.3d 186, 200, 559 N.E.2d 1313 (holding that App.R. 12(B) "requires the appellate court to refrain from consideration of errors assigned and argued in the brief of appellee on cross-appeal which, given the disposition of the case by the appellate court, are not prejudicial to the appellee").

{¶ 83} For all of the reasons presented here, we hold that ERAC had before it reliable, probative, and substantial evidence to support its order of March 25, 2004, which vacated the board's decisions to deny WMO a 2002 and a 2003 license to operate a solid waste transfer station, and that ERAC's order on March 25, 2004, as corrected by its order on March 30, 2004, was in accordance with law.

{¶ 84} We turn now to the board's appeal of ERAC's order dated June 16, 2004. In that order, ERAC granted WMO's motion for summary judgment, vacated the board's denial of WMO's application for a 2004 license to operate the ELDA transfer station, remanded the matter to the board, and ordered the board, upon remand, to issue a 2004 license to WMO.

{¶ 85} As to that order, the board presents two assignments of error:

[I.] The ERAC acted contrary to law by failing to conduct a *de novo* hearing for the 2004 license appeal by [WMO].

[II.] ERAC acted contrary to law by vacating the [board's] denial of [WMO's] license to operate its proposed waste transfer station.

{¶ 86} As we noted at the outset, shortly after ERAC reversed the board's denials of the 2002 and 2003 licenses, the board denied WMO's application for a 2004 license. The board did so, without an adjudication hearing, "for the reasons set forth in its denial of the 2002 and 2003 licenses and based on the 2002 license Record before the Board and presented to ERAC as currently on Appeal to the Tenth District Appellate Court."

{¶ 87} The board's first assignment of error argues that ERAC erred by failing to conduct a de novo hearing for the 2004 license appeal. R.C. 3745.05 provides that if the board had not conducted an adjudication hearing, then "the commission shall conduct a hearing de novo on the appeal." Here, there was no adjudication before the board, and R.C. 3745.05 would ordinarily require a hearing.

{¶ 88} We must consider, however, the prior rulings of this court. In *Conley v. Shank* (1988), 54 Ohio App.3d 185, 561 N.E.2d 1020, at syllabus, this court found:

R.C. 3745.05 requires the [predecessor board to ERAC] to conduct a hearing *de novo* in an appeal from a decision of the Director of Environmental Protection where that decision was not the result of an adjudication hearing. However, an appealing party is not "adversely affected" by the board's failure to conduct a hearing *de novo* where the result would not have been any different had the required hearing been held.

{¶ 89} The court in *Conley* went on to state, "This is not to say, however, that this will be the result in every case where the [ERAC] fails to hold a required hearing, or that this court will condone the [ERAC's] failure to meet its statutory duty." Id. at 187, 561 N.E.2d 1020.

{¶ 90} Similarly, in *Licking Cty. Citizens for a Safe Environment v. Schregardus* (2000), 136 Ohio App.3d 645, 648, 737 N.E.2d 583, we held:

We recognize that ERAC erred in not holding a *de novo* hearing before remanding the permit to the director. See R.C. 3745.05. However, we may affirm ERAC's decision to remand the permit if we conclude that Buckeye Egg is not harmed by ERAC's failure to hold a *de novo* hearing. See *Conley v. Shank* (1988), 54 Ohio App.3d 185, 186, 561 N.E.2d 1020; *Ohio Edison Co. v. Pub. Util. Comm.* (1992), 63 Ohio St.3d 555, 560, 589 N.E.2d 1292. An appealing party is not harmed by ERAC's failure to conduct a *de novo* hearing where the result of the case would not have been any different had the required hearing been held.

{¶ 91} In this case, as ERAC recognized, the outcome would not have been different if ERAC had held the hearing. The board expressly stated that it

denied the 2004 license "for the reasons set forth in its denial of the 2002 and 2003 licenses and based on the 2002 license Record before the Board and presented to ERAC as currently on Appeal to the Tenth District Appellate Court." As ERAC had already considered and rejected those reasons, and determined that the board's denial of the 2002 and 2003 licenses was unreasonable and unlawful, ERAC correctly concluded that the outcome of a hearing on the 2004 license denial would be the same.

{¶ 92} The board argues that ERAC's failure to conduct a hearing "forecloses the Board of Health's only opportunity to refute [WMO's] case in support of their license application by presenting witnesses and other evidence and by cross-examining [WMO's] witnesses. * * * ERAC simply presumes that no additional evidence could be adduced that would possibly aid the Appellant Board of Health * * *." ERAC did not foreclose the board's opportunity to gather additional information, conduct an investigation, hold an adjudication hearing of its own, or make new findings regarding the 2004 license—the board simply chose not to do so. Nor did ERAC "simply presume" that there was no additional evidence—the board expressly stated in its resolution that it was denying the 2004 license "for the same reasons" and based on the same record as the 2002 and 2003 license denials. The board having failed to base its decision on any additional reasoning or grounds to support its denial of the 2004 license, there was no need for ERAC to hold another hearing.

{¶ 93} Before this court, the board argues that the Rules of Civil Procedure do not apply to ERAC and, therefore, that procedures for summary judgment may not override the statutory requirement that ERAC hold a de novo hearing. Before ERAC, however, the board argued, "While there is no code provision adopting the Civil Rules, [the board] respectfully submits that Civil Rule 56(F) applies: the Board of Health has not conducted discovery for the 2004 hearing nor had the opportunity to do so given the short time frame proposed by appellant's motions." Here, we agree with the board's original proposition that the Rules of Civil Procedure do not apply strictly to ERAC. As ERAC recognized, however, it may look to Civ.R. 56 for a standard by which to decide motions for summary judgment, while understanding that this court's pronouncements in *Conley* and *Licking Cty. Citizens* are controlling.

{¶ 94} Finally, this court's disposition of appellants' assignments of error regarding the 2002 and 2003 license denials confirms the propriety of ERAC's action with respect to the 2004 license denial. We have found no error in ERAC's reversal of the board's 2002 and 2003 license denials. The board's denial of the 2004 license presented no new grounds for its denial and relied solely on its prior consideration and record. ERAC was bound by its March 25, 2004 resolution of the issues before it and is now bound by this court's resolution of

those same issues. For these reasons, we overrule the board's first assignment of error on the 2004 license appeal.

{¶ 95} The board's second assignment of error is that ERAC erred by vacating the board's denial of the 2004 license. Here, the board merely incorporates by reference its assignments and briefing on the 2002 and 2003 license denials. As we have already considered that briefing and overruled those assignments of error, we overrule the board's second assignment of error here, as well.

{¶ 96} For all of these reasons, we hold that ERAC's summary disposition of the 2004 license appeal was based on reliable, probative, and substantial evidence and was in accordance with law.

{¶ 97} In conclusion, we grant WMO's motion to dismiss CUFA's notice of appeal in case No. 04AP–717 and deny all other motions to dismiss. We overrule appellants' assignments of error, decline to consider appellee's cross-assignments of error, and affirm the decisions and orders of the Environmental Review Appeals Commission.

Orders affirmed.

PETREE and DESHLER, JJ., concur.

DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.