[Cite as *Little York Tavern v. Lane*, 2017-Ohio-850.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

LITTLE YORK TAVERN                  :
                                    :
        Plaintiff-Appellant         :    C.A. CASE NO.   27013
                                    :
v.                                  :    T.C. NO. 15CV3066
                                    :
MELANIE LANE, et al.                :    (Civil Appeal from
                                    :     Common Pleas Court)
        Defendants-Appellees        :
                                    :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___10th___ day of _____March_____, 2017.

. . . . . . . . . .

DAVID M. DUWEL, Atty. Reg. No. 0029583, 130 W. Second Street, Suite 2101, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

PATRICK DULL, Atty. Reg. No. 0064783, 30 E. Broad Street, 15th Floor, Columbus, Ohio 43215
        Attorney for Defendant-Appellee Ohio Civil Rights Commission

JASON P. MATTHEWS, Atty. Reg. No. 0073144, One Elizabeth Place, Suite 220, Dayton, Ohio 45417
        Attorney for Defendant-Appellee Melanie Lane

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Little York Tavern appeals from a judgment of the Montgomery County

Court of Common Pleas, which affirmed an administrative finding of the Ohio Civil Rights

Commission (OCRC) that Little York Tavern had terminated Melanie Lane's employment in retaliation for her having filed a sexual harassment claim against her supervisor.

{¶ 2} For the following reasons, the judgment of the trial court will be affirmed.

## I. Facts and Procedural History

{¶ 3} Lane worked as a server at Little York Tavern, a bar and grill, beginning in 2010. In January 2011, Lane had an encounter with her supervisor, Mark Rothwell, involving alleged lewd and inappropriate sexual behavior; this encounter occurred at Little York Tavern, but neither Lane nor Rothwell was working at the time. Lane reported Rothwell's conduct to the owner of Little York Tavern, Tom Hentrick; Lane was dissatisfied with Hentrick's response, which included suggesting that Lane switch to the day shift to avoid working with Rothwell, a proposal that did not work well for Lane for financial and child care reasons. She also reported the incident to the Vandalia Police Department, and Rothwell was arrested. According to Lane, the criminal complaint against Rothwell by Lane was later dismissed with "no trial" and no finding of guilt, on his agreement to pay court costs. In March 2011, Lane filed a sexual harassment complaint against Little York Tavern with the OCRC.

{¶ 4} According to Lane, in the months following her harassment complaint to her employer and OCRC and Rothwell's arrest, she was treated poorly at work in various ways by fellow employees and management.

{¶ 5} On October 8, 2011, while the sexual harassment complaint before the OCRC was still pending, Lane was terminated from Little York Tavern. The event that allegedly precipitated her termination was a claim by Rothwell that she (Lane) had attempted to steal from the tavern by using a supervisor's code, without authorization, to

access the computer system and delete items from a customer's bill. Rothwell apparently concluded that, when the customer paid the full amount of the bill, Lane intended to keep the amount attributable to the deleted items, in this case, about $16. Lane denied that she had accessed the computer in this manner and stated that she did not know how the items had been deleted from the customer's bill. Little York Tavern called the police, terminated Lane, and gave her the choice of signing a statement that she had committed theft or being arrested; she signed the statement in the presence of the police, but she indicated on the form that she was signing it only to avoid arrest.

{¶ 6} On December 13, 2011, Lane filed a second complaint with the OCRC. This complaint alleged that she had been terminated in retaliation for her earlier sexual harassment complaint.

{¶ 7} On December 15, 2011, the OCRC issued its Letter of Determination with respect to Lane's original sexual harassment complaint. Based on its investigation, the OCRC found that there was no probable cause to issue an administrative complaint regarding Rothwell's alleged sexual harassment of Lane.

{¶ 8} On September 28, 2012, the OCRC found probable cause to issue an administrative complaint with respect to Lane's second complaint (for retaliation). A hearing before an administrative law judge (ALJ) was held on October 24, 2013. On December 8, 2014, the ALJ issued Findings of Fact, Conclusions of Law, and Recommendations, which found that Little York Tavern had retaliated against Lane for her earlier harassment complaint and ordered it to reinstate her with back pay. Both parties filed objections. On March 12, 2015, the OCRC adopted the objections of the Attorney General's Office (presented on Lane's behalf), which related to the standard of

proof required and the failure to award a specific amount of back pay, as opposed to a general award of back pay; it denied Little York Tavern's objections. The OCRC remanded the matter for the ALJ to issue an amended report and recommendation.

{¶ 9} On March 26, 2015, the ALJ issued Amended Findings of Fact, Conclusions of Law, and Recommendations. The ALJ concluded that Little York Tavern had retaliated against Lane for filing a sexual harassment claim and ordered it to: 1) cease and desist from all discriminatory practice in violation of R.C. Chapter 4112; 2) offer to reinstate Lane under the wage and benefit terms that existed prior to her termination; 3) pay Lane back pay in the amount of $62,688.43; and 4) receive training on Ohio anti-discrimination laws. The OCRC adopted the ALJ's report on April 23, 2015.[1]

{¶ 10} Pursuant to R.C. 4112.06, Little York Tavern filed a petition for review of the OCRC's decision by the Montgomery County Court of Common Pleas. After reviewing the transcript of the administrative proceedings, the trial court affirmed the OCRC's order on January 20, 2016.

{¶ 11} Little York Tavern appeals to this court, raising four assignments of error.

## II.    Standard of Review

{¶ 12} In an administrative appeal from a decision of the OCRC to the court of common pleas, "the findings of the commission as to the facts *shall be conclusive* if supported by reliable, probative, and substantial evidence on the record and such additional evidence as the court has admitted considered as a whole." (Emphasis

---

[1] The March 2015 and April 2015 orders of the OCRC are not contained in the trial court record, but the contents are not in dispute. Our statements about the contents of these orders are gleaned from the ALJ's Amended Findings of Fact, Conclusions of Law, and Recommendations and from the parties' briefs.

added.) R.C. 4112.06(E). This standard of review is analogous to, but somewhat stricter than, the requirements set forth for administrative appeals brought under R.C. 119.12, which state that the court "may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." "If the findings of the [OCRC] are supported by some reliable, probative, and substantial evidence (albeit disputed evidence), the courts are not free to set them aside even though the courts could have drawn different inferences." *T. Marzetti Co. v. Doyle*, 37 Ohio App.3d 25, 29, 523 N.E.2d 347 (10th Dist.1987), citing 4 Davis, *Administrative Law,* Section 29.05 at 137-138 (1958 Ed.).

{¶ 13} " 'Reliable' evidence is dependable or trustworthy; 'probative' evidence tends to prove the issue in question and is relevant to the issue presented; and 'substantial' evidence carries some weight or value." *Ohio Civ. Rights Comm. v. Case W. Res. Univ.*, 76 Ohio St.3d 168, 178, 666 N.E.2d 1376 (1996); *Perry v. Ohio State Dental Bd.,* 2d Dist. Montgomery No. 22857, 2009-Ohio-4329, ¶ 17.

{¶ 14} As with other administrative appeals, this court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). This court is to determine only whether the common pleas court abused its discretion in finding there was reliable, probative, and substantial evidence to support the OCRC's order. *Boggs v. Ohio Real Estate Comm.*, 186 Ohio App.3d 96, 2009-Ohio-6325, 926 N.E.2d 663, ¶ 13 (10th Dist.); *Burchett v. E. Liverpool Dodge Chrysler Plymouth, Jeep*, 7th Dist. Columbiana No. 2001 CO 16, 2002-Ohio-3045, ¶ 9.

### III.    Standard for Showing Retaliatory Conduct

{¶ 15} Lane's complaint asserted a claim for retaliation under R.C. 4112.02(I). R.C. 4112.02(I) provides that it is an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, * * * or participated in any manner" in any R.C. Chapter 4112 "investigation, proceeding, or hearing."   "[T]o prevail on a retaliation claim, a plaintiff must show that retaliation is a determinative factor—not just a motivating factor—in the employer's decision to take adverse employment action." *Nebozuk v. Abercrombie & Fitch Co.,* 10th Dist. Franklin No. 13AP-591, 2014-Ohio-1600, ¶ 45.   *See also Univ. of Texas Southwestern Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013).

{¶ 16} In retaliation claims under Title VII, 42 U.S.C. 2000e-3(a), which is analogous to R.C. 4112.02(I), the analysis is whether the protected conduct (here, the filing of a harassment complaint) was a determinative factor in the retaliatory conduct; in other types of discrimination claims, the standard is whether the protected conduct or classification was a "motivating factor" in an adverse employment action.   *Nebozuk* at ¶ 45, citing *Smith v. Ohio Dept. of Pub. Safety*, 10th Dist. Franklin No. 12AP-1073, 2013-Ohio-4210, ¶ 59.

{¶ 17} A plaintiff may prove a retaliation claim through either direct or circumstantial evidence.   *Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 543 (6th Cir.2008); *Nebozuk* at ¶ 39. When a plaintiff lacks direct evidence, he or she may establish retaliation through circumstantial evidence using the burden-shifting framework

set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Imwalle* at 544; *Nebozuk* at ¶ 40.

{¶ 18}  Under the *McDonnell Douglas* framework, a plaintiff-employee bears the initial burden of establishing a prima facie case of retaliation.  *Nebozuk* at ¶ 40, citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, 61 S.Ct. 1089, 67 L.Ed.2d 207 (1981).  To establish a prima facie case of retaliation under R.C. 4112.02(I), an employee must establish the following: (1) she engaged in protected activity; (2) her employer at Little York Tavern knew of her participation in protected activity; (3) Little York Tavern engaged in retaliatory conduct; and (4) a causal link existed between the protected activity and the adverse action.  *Nebozuk* at ¶ 40.   The establishment of a prima facie case creates a presumption that the employer-defendant unlawfully retaliated against the employee-plaintiff. *Id.*

{¶ 19}  Once an employee establishes a prima facie case, the burden shifts to the employer to "articulate some legitimate nondiscriminatory reason for" its action.  *Id.* at  ¶ 41, citing *Carney v. Cleveland Hts.-Univ. Hts. City School Dist.,* 143 Ohio App.3d 415, 429 (8th Dist. 2001) and *Burdine* at 252-53.   If the employer carries its burden, then the burden shifts back to the employee to prove that the employer's stated reason is a pretext for discrimination.  *Id.*  "An employer may make employment decisions 'for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.' "  *Brown v. Renter's Choice, Inc.,* 55 F.Supp.2d 788, 795 (N.D.Ohio 1999), quoting *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984).

**{¶ 20}** Because Rothwell (the manager), as opposed to Hentrick (the owner and the person who actually terminated Lane), was alleged to have the discriminatory motive in this case, the OCRC characterized Lane's claim as being based on the " 'cat's paw' theory of liability."

A "cat's paw" is a person used by another to accomplish the other's purposes. *EEOC v. BCI Coca-Cola Bottling Co.,* 450 F.3d 476, 484 (10th Cir.2006). In the employment context, an unbiased decisionmaker is a cat's paw in situations where a biased subordinate, who lacks decisionmaking power, uses the unbiased decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory or retaliatory employment action. *Id.* An employer may be held liable under a cat's paw theory of liability " '[w]hen an adverse * * * decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias.' "

*Nebozuk* at *¶ 45,* citing *Bishop v. Ohio Dept. of Rehab. & Corr.,* 529 Fed.Appx. 685 (6th Cir.2013).

### IV.    OCRC's Application of Law and Findings of Fact

**{¶ 21}** In its first assignment of error, Little York Tavern contends that the trial court failed to recognize that the ALJ applied the wrong standard of proof and that the OCRC's decision was not supported by reliable, probative, and substantial evidence.

**{¶ 22}** With regard to the standard of proof, Little York Tavern argues that the ALJ did not apply the proper standard of proof when it reviewed Lane's complaint of retaliation. According to Little York Tavern, Lane failed to show that "but-for" her sexual harassment

complaint, she would not have been terminated. Specifically, Little York Tavern contends that the ALJ and the trial court failed to apply the "determinative factor" standard set forth in *Nassar*, ___ U.S. ___, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), as evidenced by the fact that the trial court "did not even mention the Nassar decision in its ruling."

**{¶ 23}** The record indicates that, during the administrative proceedings, there was some confusion about the proper standard of proof. The ALJ's Findings of Fact, Conclusions of Law, and Recommendations, mailed on December 5, 2014, stated in a footnote that *Nassar* was "inapplicable to alleged violations of R.C. 4112.02(I)" because of the liberal construction afforded to Ohio's anti-discrimination laws. The Ohio Attorney General objected to the legal interpretation contained in this footnote, arguing that *Nassar* contained the appropriate analysis and that the ALJ should apply the determinative factor anaylsis – or "but-for" causation standard -- set forth in *Nassar*;[2] it also asked that the ALJ set forth a specific amount of back wages that was owed to Lane by Little York Tavern. The OCRC adopted the Attorney General's objections and remanded for the ALJ to issue an amended order. On March 26, 2015, the ALJ issued Amended Findings of Fact, Conclusions of Law, and Recommendations, which expressly relied on *Nassar* and the "but-for" standard and set forth a specific amount of back wages that was owed. The findings of fact and conclusions of law were not changed in any other significant way.

**{¶ 24}** Little York Tavern views the ALJ's recognition of a different standard in the amended order, without any changes in the findings of fact and conclusions of law, as an indication of the inadequacy of the ALJ's decision. It also infers that the ALJ did not

---

[2] Little York Tavern's brief states that "all counsel" objected to the initial standard applied by the ALJ, but the parties' objections indicate that only the Attorney General objected on this basis.

apply the proper standard because the ALJ did not expressly discuss the difference between a "motivating factor" and a "determinative factor." Little York Tavern asserts that the ALJ omitted a "significant matter" and "failed to conduct the independent scrutiny required" by Ohio law. With respect to the trial court, Little York Tavern argues that the court failed to consider whether the ALJ had properly applied applicable case law and did not "conduct the independent scrutiny required," suggesting that the court (among others) "seem[ed] more interested in reaching a desired result, notwithstanding the actual facts or the applicable law."

**{¶ 25}** First, we will not address Little York Tavern's unsubstantiated allegation that the trial court was predisposed to "a desired result" and disregarded the "actual facts." Little York Tavern has presented no evidence of any bias on the part of the trial court or anyone else involved in the case, and it did not take any legal recourse available to it if it seriously intended to allege bias.

**{¶ 26}** The fact that the findings of fact did not change when the ALJ reviewed the applicable law does not demonstrate any shortcoming in the ALJ's handling of the case. The legal standard had no direct bearing on the ALJ's views with respect to the credibility of the witnesses. Likewise, although the ALJ applied a different, more stringent legal standard in its amended recommendation, it is not a clear indication of error that the ALJ reached the same legal conclusions.

**{¶ 27}** Little York Tavern asserts that the ALJ's finding that Lane "was attempting to steal money on the day she was terminated" (Little York Tavern's words) precluded a finding that the "but-for" standard set forth in *Nassar* had been satisfied. However, although the ALJ found that Little York Tavern had met its burden of production on the

interim step of the *McDonald-Douglass* analysis, it is apparent that the ALJ was unpersuaded by Little York Tavern's claim that Lane was attempting to steal money on the day she was fired.   Rather, the ALJ found the alleged theft to be a pretext for wrongful termination.   The ALJ's findings included that:

- Lane complained of "harsh treatment" and received "a large amount of written disciplinary infractions" after she filed her complaint (Conclusion of Law #14-15); [3]

- When Lane complained to the owner about problems with other employees, he suggested that she was the one with the problem (CL#27);

- Lane's "purpose for coming into the kitchen on October 8, 2011 [the night of the alleged theft] was to correct the mistake on the customer's check" (CL#31);

- Lane was not presented with any evidence of theft or given an opportunity to explain herself regarding the deleted items on the customer's check (CL# 32);

- Rothwell (the manager and alleged harasser) knew theft was one offense Hentrick (the owner) would not tolerate and would result in immediate termination (CL#33); and

- "Although Rothwell was aware that [Lane] had paid for the pizza he neglected to make that disclosure to Hentrick" (CL#34); and

---

[3] The numbering of the conclusions of law refers to the Amended Findings of Fact, Conclusions of Law, and Recommendations.

- "A reasonable inference can be draw that Rothwell patiently laid the groundwork for an opportunity to manufacture a reason to terminate [Lane] without looking like it was being done because [Lane] complained about sexual harassment." (CL# 35)

{¶ 28} Conclusion of Law #20, on which Little York Tavern relies, found only that Little York Tavern had met *its burden of production* by introducing evidence on a non-discriminatory reason for Lane's termination, i.e., that Lane had engaged in attempted theft by deleting food items from a ticket. The ALJ did not conclude that Lane had committed a theft, as Little York Tavern suggests; in fact, it concluded that the alleged theft was a pretext for retaliation. (CL #31-35, 42) Thus, Little York Tavern's argument that the ALJ's decision was not supported by reliable, probative and substantial evidence because the finding in Conclusion of Law #20 was inconsistent with its disposition of the case is without merit.

{¶ 29} The first assignment of error is overruled.

### V.    Use of Exhibit A

{¶ 30} In its second assignment of error, Little York Tavern contends that the ALJ unreasonably and arbitrarily excluded proffered Exhibit A, which was "a lynchpin of [its] defense."

{¶ 31} Exhibit A was the OCRC's December 15, 2011 Letter of Determination from Lane's claim of sexual harassment filed in March 2011, which concluded that the OCRC "found no information or records that would raise an inference that Respondent [Little York Tavern] unlawfully discriminated against [Lane]." It continued:

Specifically, the Commission found that Respondent spoke with the alleged

harasser regarding Charging Party's complaint of sexual attack. The alleged harasser was informed that he would be terminated, if the allegation could be verified. In addition to making a formal complaint with Respondent, the Charging Party filed a report with the Police Department. The alleged harasser was interviewed by the Police. Ultimately the charges were dismissed. *Charging Party has indicated that there has been no other incident since she filed her formal complaint with the Respondent.* The Respondent talked with both parties after the allegations were made and the Charging Party and the alleged harasser continue to work for Respondent. The Commission finds no credible information supporting Charging Party's allegation of unlawful activity.

(Emphasis added.)

**{¶ 32}** Little York Tavern sought to admit this exhibit to "refut[e] Ms. Lane's testimony [at the hearing] * * * about this parade of all these horrible things that happened to her after she filed the charge. * * * [T]here's a statement in this document that undercuts her testimony today." Little York Tavern also asserted that the document was "offered for purposes of impeachment." The OCRC's attorney objected on the bases that the document did not contain any statement by Lane and that Lane could not testify on behalf of the OCRC or explain why it made any specific determination. The ALJ questioned Little York Tavern's attorney about what the finding in the OCRC letter of determination regarding harassment had to do with the retaliation claim, and the ALJ did not permit Little York Tavern to question Lane about it.

**{¶ 33}** Although the rules of evidence do not control administrative hearings, an

agency may consult the rules for guidance. *Johnson v. Clark Cty. Bd. of Revision*, 2d Dist. Clark No. 2016-CA-13, 2016-Ohio-7518, ¶ 53, citing *HealthSouth Corp. v. Testa,* 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 13; Evid.R. 101(A). Therefore, any question regarding the admission or exclusion of evidence in administrative proceedings is reviewed under an abuse of discretion standard. *Sierra Club v. Koncelik,* 2013-Ohio-2739, 991 N.E.2d 1240, ¶ 43 (10th Dist.), citing *Waste Mgt. of Ohio, Inc. v. Bd. of Health,* 159 Ohio App.3d 806, 2005-Ohio-1153, 825 N.E.2d 660, ¶ 53 (10th Dist.). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 34}** The statement contained in the OCRC's December 2011 Letter of Determination that no "other incident" had occurred since Lane's harassment complaint was filed did not have any direct bearing on Lane's retaliation claim. Even if we were to assume that Exhibit A accurately represents a statement made by Lane, the statement only establishes that there were no additional instances of sexual harassment as of December 2011. The letter does not address whether there had been any incidents of retaliation for having filed a harassment complaint. The ALJ could have reasonably concluded that the existence (or lack thereof) of additional instances of harassment was irrelevant to the retaliation claim.

**{¶ 35}** Little York Tavern's counsel acknowledged at oral argument that whether the initial harassment claim was found to have merit had no bearing on the question of whether Little York Tavern had retaliated against Lane for filing it. Moreover, the manner and context in which Lane allegedly made the statement to the OCRC investigator, and

whether it was accurate, could not be determined from the document itself.

{¶ 36}  In its review of the ALJ's decision, the trial court found that Little York Tavern was attempting to use Exhibit A to impeach Lane, notwithstanding that Exhibit A did not contain a sworn statement from Lane, and that no witness from OCRC was called to authenticate Exhibit A or to testify about its contents.   The court also noted that Little York Tavern cited "no code sections or case law to support its contention that it was clear error for the ALJ not to allow Exhibit A into evidence," and that Little York Tavern also failed to show any exception to the hearsay rule that would apply or to lay a proper foundation for the introduction of the document.   As such, the trial court concluded that the ALJ acted reasonably in not permitting Little York Tavern to "impeach" Lane using a representation made by a third party and that it was not error for the ALJ to exclude the exhibit.

{¶ 37}  We agree with the ALJ and the trial court.   The relevance of the statement attributed to Lane in Exhibit A was not established, and reasonable, legitimate concerns were raised about holding Lane accountable for a hearsay statement in an agency's document by allowing Little York Tavern to "impeach" her with such a statement.   The trial court did not abuse its discretion in affirming the ALJ's ruling on the use of Exhibit A.

{¶ 38}  The second assignment of error is overruled.

## VI.   Determination of Back Pay

{¶ 39}  In Little York Tavern's third assignment of error, it argues that the ALJ erred in calculating back pay and in excluding certain evidence offered by Little York Tavern regarding mitigation of the damages; it also argues that the trial court erred in failing to find that the ALJ had erred.   Specifically, Little York Tavern argues that it should have

been allowed to present testimony from Lane and an assistant supervisor at Little York Tavern, Kelly Severs, that other restaurant employers in the area were hiring during the months after Lane left Little York Tavern.

{¶ 40} R.C. 4112.05(G) authorizes the OCRC to award back pay and other relief after it finds a violation of R.C. Chapter 4112. A claimant has a duty to minimize damages in the form of back pay by using reasonable diligence in finding other suitable employment; a claimant "need not go into another line of work, accept a demotion, or take a demeaning position," but may not refuse a job "substantially equivalent" to the one he or she was denied or from which he or she was terminated. *See Ford Motor Co. v. E. E. O. C.*, 458 U.S. 219, 231-32, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982); *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.*, 61 Ohio St.3d 607, 621, 575 N.E.2d 1164 (1991); *Hollingsworth v. Time Warner Cable*, 168 Ohio App.3d 658, 2006-Ohio-4903, 861 N.E.2d 580, ¶ 68 (1st Dist.).

{¶ 41} "The purpose of a back-pay award is to make the wrongfully terminated employee whole and to place that employee in the position the employee would have been in absent a violation of the employment contract." *State ex rel. Stacy v. Batavia School Dist. Bd. of Edn.,* 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298, ¶ 26. To receive back pay, an employee must demonstrate reasonable efforts to mitigate his or her damages, but the burden of proving any failure to mitigate is on the employer. *Coon v. Tech. Constr. Specialties, Inc.*, 9th Dist. Summit No. 24542, 2010-Ohio-417, ¶ 39, citing *Cuyahoga Falls Edn. Assn. v. Cuyahoga Falls City School Dist. Bd. of Edn.,* 112 Ohio App.3d 366, 371, 678 N.E.2d 976 (1996) and *Young v. Frank's Nursery & Crafts Inc.*, 58 Ohio St.3d 242, 244, 569 N.E.2d 1034 (1991); *Calloway v. Wasik*, 8th Dist. Cuyahoga

No. 92304, 2009-Ohio-6215, ¶ 7.

{¶ 42} At the hearing before the ALJ, Little York Tavern attempted to question Lane and Severs about the availability of other "fast food" jobs in the vicinity of Little York Tavern at the time Lane was terminated from her employment. Little York Tavern claims that this evidence was relevant to Lane's "state of mind," which seems to mean whether she was really looking for work during this time, and to her mitigation of her damages.

{¶ 43} Little York Tavern asked Lane about whether restaurants do a lot of hiring before the holidays, because the holidays are a busy time; she answered that, although restaurants do get busy around the holidays, she was not offered any jobs in response to applications she submitted during that time (October – December 2011). Lane also stated that she did not think restaurants did a lot of hiring for the holidays because it gets very slow immediately thereafter. When Little York Tavern continued to pursue this line of questioning, the Attorney General's attorney objected, and the ALJ found that Little York Tavern was asking Lane to "speculate about what other restaurant owners were doing," with no basis for such knowledge.

{¶ 44} Severs testified that she had worked at restaurants for 30 years and had been a manager for approximately 21 years. She also testified that there were 15-20 restaurants "in the area" near Little York Tavern. Counsel for Little York Tavern then asked whether, if Severs had been a server looking for a job in October 2011, she thinks she would have been able to find a job. The Attorney General's attorney objected, arguing that the testimony would be speculative, as Severs had not been a server and had not looked for work during the relevant time frame. The ALJ sustained the objection.

{¶ 45} Little York Tavern argues that it should have been allowed to introduce

testimony, through Lane and Severs, about whether Lane would or should have been able to find a job in late 2011; Little York Tavern suggests that Lane "simply elected to stay home for five months" before searching for work. However, Lane testified that she had applied for jobs and had not been hired during the relevant period. Little York Tavern did not establish that she had personal knowledge of whether any other employers in the area – where she did not apply – had also been hiring. Little York Tavern also failed to establish that Severs had any personal knowledge of the availability of jobs in the vicinity of Little York Tavern in the months following Lane's termination. As such, the trial court, citing Evid.R. 602, found that the ALJ had not erred or acted unreasonably in limiting this testimony as it did.

{¶ 46} In her hearing testimony, Lane detailed how much she had earned at Little York Tavern, what her responsibilities had been, and her efforts to look for another job. She listed numerous restaurants at which she had applied for second shift work, which was when she had day care and when she had generally worked at Little York Tavern. She testified that she got a job as a waitress at Cracker Barrel in March 2012, then left Cracker Barrel for a job at BJ's Restaurant and Brewhouse in approximately September 2013. She also stated that she did not apply for unemployment compensation because, in light of her firing, she did not think she would receive it.[4]

---

[4] In discussing the availability of alternate employment, Little York Tavern repeatedly refers in its brief to positions in the "fast food restaurant industry." However, the evidence was undisputed that Lane was a waitress who was assigned to certain tables or customers, during a certain shift, and earned most of her income from tips. Whether "fast food" jobs were substantially equivalent to Lane's employment at Little York Tavern would have been for the ALJ to determine, if Little York Tavern had presented proper evidence that such other jobs were available within the timeframe that Lane was looking for new employment.

{¶ 47} The trial court found that there was reliable, probative, and substantial evidence in the record that Lane "used reasonable care and diligence to find comparable employment." It also found that her failure to apply for unemployment was irrelevant to the issue of mitigation, because unemployment compensation does not constitute "interim earning" and should not be deducted from an award of back pay under R.C. 4112.05(G).

{¶ 48} We previously set forth the standard of review for the trial court and an appellate court in an administrative appeal. The trial court did not abuse its discretion in concluding that the ALJ's findings with respect to Lane's mitigation of damages by finding other work were supported by reliable, probative, and substantial evidence.

{¶ 49} The trial court did not expressly address Little York Tavern's suggestion that the ALJ could have taken judicial notice of the availability of jobs in the area. As discussed above, the Rules of Evidence do not control at an administrative hearing, but they can provide guidance. Evid. R. 201(B) permits judicial notice of certain kinds of facts and states:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

{¶ 50} Because Little York Tavern had not asked the ALJ to take judicial notice of the availability of jobs during the period Lane was looking for work, the trial court could have concluded that Little York Tavern had waived any argument that judicial notice should have been taken. Moreover, the ALJ and trial court could have reasonably concluded that the types and numbers of jobs available in a particular place at a particular

time (and whether those jobs are comparable to another job) were neither "generally known" nor "capable of accurate and ready determination" by resort to objective, reliable sources. The availability of comparable jobs was clearly in dispute at the hearing, insofar as Little York Tavern sought to offer evidence from one restaurant-industry worker (Severs) to contradict that of another (Lane). If the existence of comparable, available jobs was objectively verifiable, as Little York Tavern contends, it could have presented evidence from "objective, reliable sources" to substantiate this claim. Little York Tavern's argument that the trial court should have taken judicial notice of the availability of jobs comparable to Lane's at the time she was fired is without merit.

{¶ 51} The third assignment of error is overruled.

### VII.   Arguments Related to Specific Findings of Fact

{¶ 52} In its fourth assignment of error, Little York Tavern takes issue with eight specific factual findings of the ALJ. An appellate court does not conduct a de novo review of an ALJ's findings on appeal from a trial court's affirmance of an administrative ruling, and we have already held that the trial court did not abuse its discretion in finding that there was reliable, probative, and substantial evidence supporting the ALJ's conclusions. As such, we will not discuss these arguments, and the fourth assignment of error is overruled.

### VIII.   Conclusion

{¶ 53} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

David M. Duwel
Patrick Dull
Jason P. Matthews
Hon. Timothy N. O'Connell