[Cite as *Zimmer Power Co., L.L.C. v. Vogel*, 2023-Ohio-1953.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Zimmer Power Company, LLC, | : | |
| Appellant-Appellant, | : | No. 22AP-451 |
| | | (ERAC No. 21-7104) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| [Anne M. Vogel], Director of Ohio EPA, | : | |
| Appellee-Appellee. | : | |
| | : | |
| Miami Fort Power Company, LLC, | | |
| | : | |
| Appellant-Appellant, | | No. 22AP-452 |
| | : | (ERAC No. 21-7105) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| [Anne M. Vogel], Director of Ohio EPA, | | |
| | : | |
| Appellee-Appellee. | | |
| | : | |
| Buckeye Power, Inc., | : | |
| Appellant-Appellant, | : | No. 22AP-453 |
| | | (ERAC No. 21-7106) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| [Anne M. Vogel], Director of Ohio EPA, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on June 13, 2023

**On brief:** *Shumaker, Loop & Kendrick, LLP, Michael E. Born, Marcus A. Miller*, and *Krystina E. Garabis*, for appellants. **Argued:** *Michael E. Born*.

**On brief:** *Dave Yost*, Attorney General, *Allen M. Vender*, and *Cameron F. Simmons*, for appellee.  **Argued:** *Allen M. Vender*.

APPEALS from the Environmental Review Appeals Commission

LUPER SCHUSTER, J.

{¶ 1}  Appellants, Zimmer Power Company, LLC, Miami Fort Power Company, LLC, and Buckeye Power, Inc. (collectively "Ohio Utility Group"), appeal from an order of the Environmental Review Appeals Commission ("ERAC") affirming the May 2021 adoption of Ohio Adm.Code Chapter 3745-30 by appellee, Laurie A. Stevenson, former Director of the Ohio Environmental Protection Agency ("Director").  For the following reasons, we affirm.

## I.  Factual and Procedural Background

{¶ 2}  Ohio Utility Group operates coal-powered electric generating facilities in Ohio.  Coal ash, also known as coal combustion residuals ("CCR"), is a waste produced at these facilities.  In May 2021, and after the necessary rule review process, the Director adopted a revised version of Ohio Adm.Code Chapter 3745-30, which regulates industrial or manufacturing waste ("IMW").[1]  Pursuant to R.C. 3745.04, Ohio Utility Group appealed to ERAC from the Director's adoption of those rules.  Ohio Utility Group alleged the "Director's action is unlawful and unreasonable because Ohio Adm.Code Chapter 3745-30 requires [Ohio Utility Group] to comply with parallel different state and federal rules simultaneously." (June 14, 2021 Appeal at 3.)

{¶ 3}  In October 2021, the Director moved for summary judgment, arguing there was no genuine issue of material fact in Ohio Utility Group's appeal before ERAC, and she was entitled to judgment as a matter of law.  In opposition to the motion, Ohio Utility Group argued that summary judgment was not appropriate because it had a statutory right to a de novo hearing before ERAC, because there are conflicts between the Ohio and federal rules

---

[1] This chapter was initially promulgated in 1992. *See Buckeye Power v. Korleski*, ERAC No. 255365-665370, 2008 Ohio ENV LEXIS 6 (Aug. 27, 2008) (discussing history of Ohio's industrial or manufacturing solid waste rules).

regulating CCR, and because there were genuine issues of material fact regarding the reasonableness of the Director's action.

**{¶ 4}** In January 2022, ERAC requested the parties file issue briefs addressing the following:

> 1. To the extent Appellants' appeal is a facial challenge to the Industrial and Manufacturing Waste ("IMW") Rules, the parties shall address the alleged specific conflicts, if any, between the IMW Rules, Coal Combustion Residuals ("CCR") Rules, and any other applicable statutes or regulations.
>
> 2. To the extent Appellants' appeal is an as-applied challenge to the IMW Rules, the parties shall address the specific factual scenario(s) under which the alleged conflict has occurred/will occur. The parties shall also address whether such an as-applied challenge is ripe for review before ERAC.

(Jan. 26, 2022 Order for Issue Briefing at 1.)

**{¶ 5}** As to the conflict issue, Ohio Utility Group explained that its appeal "is not limited to a mere comparison of conflicts between the state and federal rules," but "the crux of the Utilities' appeal is the Director's adoption of the IMW Rules without a lawful and reasonable basis, despite any comparison to the CCR Rules. Any comparison between the IMW and CCR Rules is simply to highlight how inadequate the Director's action is when held to the required legal standard." (Ohio Utility Group's Issue Brief at 1-2.) It also argued that "IMW Rules duplicate, overlap, and/or conflict with the CCR Rules in various ways. Most notably, the groundwater monitoring, assessment monitoring, corrective action, and closure and post-closure care regulations under the state and federal programs differ, making compliance with both sets of regulations overly burdensome and unnecessarily expensive." (Ohio Utility Group's Issue Brief at 2.) In response, the Director argued that Ohio Utility Group failed to identify any conflict between the IMW and CCR rules, and she noted that Ohio Utility Group acknowledged that it could comply with both sets of rules. In reply, Ohio Utility Group emphasized that its ability to comply with federal and state rules simultaneously was not the central issue; rather, "it is the requirement to comply with the dual regulations that highlights the unreasonableness of the Director's action." (Ohio Utility Group's Issue Reply Brief at 2.)

{¶ 6}  In June 2022, ERAC issued its decision on the Director's summary judgment motion.  ERAC noted that the parties agreed the Director acted lawfully in adopting Ohio Adm.Code Chapter 3745-30, pursuant to her authority under R.C. Chapter 3734.  The dispute centered on whether the Director acted unreasonably.  ERAC concluded that there was no genuine issue of material fact as to whether the Director had a valid factual foundation to adopt Ohio Adm.Code Chapter 3745-30, and therefore there was no genuine issue as to whether the Director had acted unreasonably in adopting those rules.  Consequently, ERAC granted the Director's summary judgment motion and affirmed her action.

{¶ 7}  Ohio Utility Group timely appeals.

## II.  Assignments of Error

{¶ 8}  Ohio Utility Group presents the following assignments of error for our review:

> [I.] The Environmental Review Appeals Commission ("ERAC") erred by granting Appellee Lauri[e] Stevenson's, Director of Ohio EPA ("the Director"), Motion for Summary Judgment without conducting a de novo hearing, as required by R.C. 3745.05.
>
> [II.] ERAC erred in granting the Director's Motion for Summary Judgment because genuine issues of material fact, as to the factual foundation supporting the promulgation of the IMW Rules, remained.
>
> [III.] ERAC's decision to grant the Director's Motion for Summary Judgment is not supported by reliable, probative, or substantial evidence.

## III.  Discussion

{¶ 9}  Because they involve interrelated issues, we address together Ohio Utility Group's three assignments of error.  In its first assignment of error, Ohio Utility Group contends ERAC erred in not holding a de novo hearing as to its challenge to the Director's action.  Its second assignment of error alleges ERAC erred in granting the Director's summary judgment motion because there remained genuine issues of material fact as to the factual foundation supporting the adoption of the challenged rules.  And its third

assignment of error alleges ERAC's decision is not supported by reliable, probative, and substantial evidence. These assignments of error lack merit.

{¶ 10} In reviewing an appeal from an ERAC order, a court of appeals "shall affirm the order complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, [the court] shall reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 3745.06. Reliable evidence is "evidence which can be trusted. In order for evidence to be reliable, there must be a reasonable probability that it is true. Probative evidence is evidence which tends to prove the issue in question, while substantial evidence is evidence which carries weight, or evidence which has importance and value." *Perrysburg v. Schregardus, Dir.*, 10th Dist. No. 00AP-1403 (Nov. 13, 2001) citing *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). Therefore, at issue is whether ERAC's order affirming the Director's adoption of Ohio Adm.Code Chapter 3745-30 is supported by reliable, probative, and substantial evidence and is in accordance with law.

{¶ 11} As noted above, Ohio Utility Group operates coal-powered electric generating facilities, which produce CCR (coal ash) as waste. "Because coal ash contains carcinogens and other toxic chemicals, its improper disposal can substantially harm the environment and impair the health of anyone living near disposal facilities." *Waterkeeper Alliance, Inc. v. Regan, Admr.*, 41 F.4th 654, 656 (D.C. Cir.2022). To address this issue, in 2015, the United States Environmental Protection Agency ("US EPA") Administrator adopted a rule that "set[s] forth guidelines on where and how disposal sites for [coal ash] are to be built, maintained, and monitored," and establishes "minimum criteria for the disposal of [coal ash] in landfills and surface impoundments." *Util. Solid Waste Activities Group v. Environmental Protection Agency*, 901 F.3d 414, 424 (D.C. Cir.2018); 80 Fed.Reg. 21302. Congress has permitted each state to create "a permit program or other system" of regulation for coal ash (subject to US EPA approval and oversight), that would "operate in lieu of" federal regulation. 42 U.S.C. 6945(d)(1)(A).

{¶ 12} In Ohio, R.C. Chapter 3734 addresses the design, construction, and operation of facilities that produce solid waste, including CCR. *Citizens Against Am. Landfill*

*Expansion v. Koncelik, Dir.*, 10th Dist. No. 12AP-741, 2014-Ohio-123, ¶ 37. As pertinent here, R.C. 3734.02(A) requires the Director to promulgate rules "governing solid waste facilities and the inspections of and issuance of permits and licenses for all solid waste facilities in order to ensure that the facilities will be located, maintained, and operated, and will undergo closure and post-closure care, in a sanitary manner so as not to create a nuisance, cause or contribute to water pollution, create a health hazard, or violate 40 C.F.R. 257.3-2 or 40 C.F.R. 257.3-8, as amended." And pursuant to R.C. 3734.12(D), the Director must adopt rules "[e]stablishing performance standards for owners and operators of hazardous waste facilities and owners and operators of solid waste facilities, necessary to protect human health or safety or the environment." Therefore, the General Assembly has granted the Director broad statutory authority to adopt solid waste rules to protect human health and safety and the environment.

{¶ 13} In May 2021, and after the required rule review process was conducted pursuant to R.C. 106.03, the Director adopted a revised version of the rules governing IMW, Ohio Adm.Code Chapter 3745-30. IMW "is a type of solid waste," and it includes waste generated by coal-burning operations, foundry operations, papermaking operations, and waste generated by other industrial operations. Ohio Adm.Code 3745-30-01(I)(1). Ohio's regulation of CCR has not obtained US EPA approval as a program to operate in lieu of the federal CCR rules, and thus the federal and Ohio rules both apply to Ohio facilities producing CCR. In its appeal before ERAC, Ohio Utility Group argued the Director's adoption of this regulatory scheme unreasonably required simultaneous compliance with "parallel different state and federal rules." (June 14, 2021 Appeal at 3.)

{¶ 14} Before addressing the substance of this dual regulation argument, we review ERAC's disposition of the appeal at summary judgment. In an appeal from the Director's action, and in the absence of a prior adjudication hearing, under R.C. 119.09 and 119.10, or before a board of health, ERAC "shall conduct a hearing de novo on the appeal." R.C. 3745.05(A). "If, upon completion of the hearing, the commission finds that the action appealed from was lawful and reasonable, it shall make a written order affirming the action, or if the commission finds that the action was unreasonable or unlawful, it shall make a written order vacating or modifying the action appealed from." R.C. 3745.05(F). Under this standard, the term "unlawful" means "that which is not in accordance with law," and

the term "unreasonable" means that which does not have a valid factual foundation. *Citizens Commt. to Preserve Lake Logan v. Williams, Dir.*, 56 Ohio App.2d 61, 70 (10th Dist.1977). Because ERAC decided the matter on the Director's summary judgment motion, upon finding the Director's action lawful and an absence of any genuine issue of material fact concerning the reasonableness of the Director's action, it did not conduct a hearing de novo. Ohio Utility Group argues the absence of that hearing requires the reversal of ERAC's order. We disagree.

{¶ 15} The Ohio Rules of Civil Procedure apply with some exceptions to all courts of the state but not to administrative bodies. Civ.R. 1(A); *Harbor View v. Jones, Dir.*, 10th Dist. No. 10AP-356, 2010-Ohio-6533, ¶ 54. While Civ.R. 56 does not bind ERAC's review of a summary judgment motion, this court has noted that the rule may guide ERAC when it decides such a motion. *Waste Mgt. of Ohio, Inc. v. Cincinnati Bd. of Health*, 159 Ohio App.3d 806, 2005-Ohio-1153, ¶ 93 (10th Dist.). Further, although ERAC was statutorily required to hold a hearing de novo in this matter, we will affirm an ERAC order " 'where the result would not have been any different had the required hearing been held.' " *Id.* at ¶ 88, quoting *Conley v. Shank, Dir.*, 54 Ohio App.3d 185 (10th Dist.1988), syllabus. *See Licking Cty. Citizens for a Safe Environment v. Schregardus, Dir.*, 136 Ohio App.3d 645, 648 (10th Dist.2000) ("An appealing party is not harmed by ERAC's failure to conduct a de novo hearing where the result of the case would not have been any different had the required hearing been held.").

{¶ 16} Summary judgment "is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing left to try." *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992), citing *Norris v. Ohio Std. Oil Co.*, 70 Ohio St.2d 1, 2 (1982). As such, "[i]t must be awarded with caution, resolving any doubts and construing all the evidence against the moving party." *Id.* To prevail on a motion for summary judgment, the moving party must demonstrate that, when the evidence is construed most strongly in favor of the non-moving party, no genuine issue of material fact remains to be litigated and it is entitled to judgment as a matter of law. Civ.R. 56(C). A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 151 (1974). Thus, summary judgment is a

means to avoid an unnecessary trial—a trial that would not alter the ultimate outcome of the case. Consequently, if summary judgment is appropriate, then additional proceedings, including a hearing de novo, are unnecessary to resolve a dispute.

{¶ 17} In its appeal before ERAC, Ohio Utility Group had the burden of demonstrating there was no factual and legal basis upon which the Director could promulgate the rules as she did. *Buckeye Power*, *Inc. v. Korleski, Dir.*, 183 Ohio App.3d 179, 2009-Ohio-2232, ¶ 14 (10th Dist.), citing *Johnson's Island Property Owners' Assn. v. Schregardus, Dir.*, 104 Ohio App.3d 563, 568 (10th Dist.1995). "Where the evidence demonstrates that it is reasonably debatable as to whether the director should have promulgated the rules as he did, ERAC's duty is to affirm the director, rather than merely to substitute its judgment for his." *Buckeye Power*, *Inc.*, 2009-Ohio-2232, at ¶ 15, citing *Citizens Commt. to Preserve Lake Logan* at 70.

{¶ 18} Ohio Utility Group concedes the Director's legal authority to adopt the rules at issue, but it challenges ERAC's determination that there was no genuine issue as to whether there was a factual foundation for those rules. Ohio Utility Group argues the Director's submitted evidence did not constitute reliable, probative, and substantial evidence supporting the adoption of the IMW rules, and the evidence it submitted in opposition to the summary judgment motion disputed the Director's evidence. In support, Ohio Utility Group asserts that the Director's witness testimony was biased, conclusory, and not supported by "any facts, data, studies or other objectively verifiable information substantiating the reasonableness of the IMW Rules or the additional protections the rules provide to human health and the environment." (Ohio Utility Group Appellate Brief at 20.) Ohio Utility Group also asserts its expert's testimony indicated, in contrast to the Director's submitted testimony, that "the conflicts between the IMW and CCR Rules are not more protective of human health and the environment." (Ohio Utility Group Appellate Brief at 20.)

{¶ 19} We reject Ohio Utility Group's argument that the Director's evidence was not reliable, probative, and substantial evidence because it was not buttressed with "objectively verifiable information," such as data or studies. The Director supported her summary judgment motion with affidavits of Alison M. Shockley, an Ohio EPA Environmental Manager with the Division of Materials and Waste Management, and Lindsay C. Taliaferro

III, an Ohio EPA Geologic Program Supervisor with the Division of Drinking and Ground Waters. Shockley oversees the enforcement of Ohio's IMW rules, and she averred that "[m]ost of the requirements in the IMW rules have existed in prior forms of the rules since 1992." (Shockley Aff. at 2.) She also averred that, since the promulgation of the federal CCR rules, the Ohio EPA has been working toward obtaining approval for a state CCR program to operate in lieu of the federal program. This effort has been unsuccessful, however, and currently six facilities remain subject to both the federal CCR rules and the Ohio IMW rules. She further averred that the current IMW rules "provide many protections that are not present in the federal CCR regulations," and she detailed some of these protections. (Shockley Aff. at 3.) Consistent with Shockley, Taliaferro averred that the Ohio IMW rules "offer additional protections which are not present in the federal regulations governing CCR." (Taliaferro Aff. at 2.) Taliaferro detailed enhanced groundwater monitoring requirements existing under IMW rules that do not exist under the federal rules. Fundamentally, this evidence demonstrates that Ohio Adm.Code Chapter 3745-30 is a framework to protect the environment and Ohioans from negative effects of IMW, including CCR, a byproduct of coal-fired electric generating facilities that pose known significant environmental and health risks. Contrary to Ohio Utility Group's argument, no additional evidence was necessary to demonstrate the Director had a factual basis to adopt the latest version of the IMW rules. Therefore, we reject Ohio Utility Group's argument that ERAC's decision was not supported by reliable, probative, and substantial evidence.

{¶ 20} We also reject Ohio Utility Group's contention that its expert's testimony created a genuine issue of material fact. Ohio Utility Group argues that, to be entitled to judgment as a matter of law and awarded summary judgment, the Director needed to show there was no genuine issue that the state IMW rules provide protection to human health or the environment beyond that provided by the federal CCR rules. Ohio Utility Group reasons that the Director did not meet this burden, and, therefore, the Director was not entitled to summary judgment. We disagree.

{¶ 21} As set forth above, the Director's witnesses both testified that Ohio Adm.Code Chapter 3745-30 contains environmental and human health protections beyond those of the federal CCR rules. In contrast, Ohio Utility Group's witness, Nicholas Kasper, the environmental regulations compliance manager for Buckeye Power, Inc., averred that the

Ohio Utility Group "facilities [are] subject to parallel, inconsistent, state and federal regulations," and that in these areas "of conflict between the IMW and CCR rules," the Ohio IMW rules are unnecessary, burdensome, and often not more protective of human health and the environment than the federal CCR rules addressing the same issues. (Kasper Aff. at 2.) Kasper's affidavit describes the "main sources of conflict between the IMW and CCR rules" as "the liner design criteria, groundwater detection, monitoring and assessment, and facility closure requirements." (Kasper Aff. at 2.) Thus, Kasper's averments may have placed at issue whether certain aspects of the Ohio IMW rules provide more protection to human health and the environment than federal CCR rules addressing the same issues. But whether certain Ohio IMW rules are more protective than federal CCR rules is not a material fact for the purpose of determining whether the Director acted unreasonably in adopting those IMW rules.

{¶ 22} Ohio Utility Group's challenge to the Director's May 2021 adoption of Ohio Adm.Code Chapter 3745-30 began as a general challenge to that regulatory framework on the basis that rules contained therein allegedly conflicted with federal rules. Further briefing before ERAC demonstrated that Ohio Utility Group did not allege conflict between the state and federal rules. Ohio Utility Group conceded that compliance with both is not impossible, and it did not otherwise allege that federal law preempts the IMW rules. Instead, Ohio Utility Group clarified that its reference to "conflict" between the rules was actually a reference to differences between the rules, which it considered unreasonable because this duality forces unnecessary compliance with two regulatory schemes. The gravamen of Ohio Utility Group's challenge to the Director's action is the contention that her adoption of the current version of the IMW rules was unreasonable because, with the 2015 promulgation of the federal CCR regulations, this adoption maintains a dual regulatory framework that Ohio Utility Group facilities must comply with, causing inefficiencies and additional financial burdens.

{¶ 23} Therefore, Ohio Utility Group's appeal of the Director's action ultimately relies on the faulty premise that, in view of the promulgation of the federal CCR regulations in 2015, the Director needed to justify her May 2021 adoption of IMW rules, and the associated burden it places on facilities, with sufficient proof of the necessity of dual regulation, or that the Ohio IMW rules provide more protection than the federal CCR rules.

Such a justification was unnecessary. The Director is charged with adopting rules that protect the environment and human health and safety from the dangers of manufacturing and industry produced solid waste, and Ohio Utility Group does not contend the Ohio rules addressing CCR do not provide protection to the environment or human health and safety. Whether the societal and environmental benefits of protection outweigh the associated compliance burden on facilities reasonably may be debated as a matter of public policy. But the Director's action in adopting rules affecting those competing interests does not demonstrate unreasonableness simply because federal regulations concerning the same problem also exist, or because Ohio Utility Group unfavorably views the burden placed on impacted facilities. Based on these circumstances, we conclude Ohio Utility Group has not shown that ERAC erred in finding no genuine dispute as to whether the Director's action had a valid factual foundation.

{¶ 24} Because ERAC's order, affirming the Director's May 2021 adoption of the IMW rules, is supported by reliable, probative, and substantial evidence, and is in accordance with law, we must affirm. Accordingly, we overrule Ohio Utility Group's first, second, and third assignments of error.

## IV. Disposition

{¶ 25} Having overruled all three of Ohio Utility Group's assignments of error, we affirm the order of the Environmental Review Appeals Commission.

*Order affirmed.*

BOGGS and EDELSTEIN, JJ., concur.

————————————